## BAYNE v. WHISTLER.

(Second Division. Nome. January 15, 1910.)

No. 1934.

1. PRINCIPAL AND AGENT (§ 71*)—FRAUD OF AGENT.

Where the relation of principal and attorney in fact or agent subsisted between the parties, it was the duty of the agent (defendant), before taking conveyance from the principal (plaintiff), to make full disclosure to him of the giving of leases of mining property in which the principal was a co-owner, and the amount of gold produced from the claim by the lessees, and to report as such attorney in fact whether or not the lessees were willing to continue work. Where this duty was violated by the agent, who procured the principal to make a deed to himself for a nominal consideration in ignorance of the facts, the plaintiff has the right to avoid the transaction.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 147; Dec. Dig. § 71.*]

2. PRINCIPAL AND AGENT (§ 14*)—EXISTENCE OF RELATION.

By defendant's undisputed assumption to act as plaintiff's agent in respect to the very property involved in the suit he incurred the responsibilities of an agent and must be so regarded. Where an unequivocal act of agency by a party is shown, whether it is by actual employment of the parties or as

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

a volunteer can make no difference as to his responsibilities growing out of that relation.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 26–33; Dec. Dig. § 14.*]

3. PRINCIPAL AND AGENT (§ 71*)—FRAUD OF AGENT.

Where the agent, through fraud and betrayal of confidence, procured a deed of mining property from the principal, who had no knowledge at the time that it had been found to be valuable by those prospecting thereon in connection with the agent, it was not incumbent on the principal to rescind the deed given by him to his agent until he gained actual knowledge of the fraud practiced on him by his agent. It is not enough to show that he might have known or suspected it from the data within his reach.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 147; Dec. Dig. § 71.*]

4. CANCELLATION OF INSTRUMENTS (§ 34*)—LACHES.

In an action to set aside a deed made between parties standing in a confidential relation with each other, the defense of laches is not regarded with favor. When fully advised, one must decide and act with reasonable despatch. But the wrongdoer cannot make extreme vigilance and promptitude conditions of rescission. It does not lie in his mouth to complain of delay.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 49–54; Dec. Dig. § 34.*]

Plaintiff and defendant, from the year 1898 up till 1905, were closely associated as friends and business associates. The plaintiff, being an older and less vigorous man than the defendant, was in his and their business matters accustomed to rely much on the judgment and advice of Whistler, the defendant. The defendant, during part of this period, kept the plaintiff's books of account. The two held jointly mining claims in the Kougarok mining district, as well as in the Cape Nome district, Alaska.

In the year 1903 the defendant, Whistler, purchased of plaintiff, Bayne, half of the latter's interest in the Dahl creek fraction, a mining claim in the Kougarok district, at an agreed price of $1,000, of which sum $260 was paid to the plaintiff, Bayne, in cash, and the residue was made payable out of the mineral product of the claim. At the time of the purchase the property was bound by the lien of a mortgage,

which included the property purchased and other claims. Subsequently the mortgage was foreclosed, and, under the decree of foreclosure, the interest purchased was sold and was never redeemed by the mortgagor. The purchase was made by Whistler with full knowledge of the mortgage resting on the property.

In the spring of 1904 the plaintiff arranged to take a river steamer owned by him, and called the Research, up the Yukon river, and, according to the testimony of Bayne, he gave Whistler a written power of attorney to care for and manage the plaintiff's interests in Alaska during his absence from Nome. The defendant testified that he had no recollection of ever receiving the power of attorney. The defendant in the year 1904 or 1905, however, assumed to act as Bayne's attorney in fact by signing a lease of the claim involved in this suit, No. 6 below discovery on Wonder Creek, to three lessees, Stipek and others. This exercise of authority lends force to the evidence of Bayne on this point and establishes as a fact, by the weight of evidence, that a power of attorney had been given to the defendant, as Bayne testifies.

Bayne returned to Nome in the fall of 1904, and after a short stay there he went thence to San Francisco by sea. He returned to Nome in July, 1905, in company with one J. R. Leonard, a mining man, who expected to prospect some of the Kougarok and Nome properties of the plaintiff, Bayne. Bayne, on landing at Nome, proceeded at once to Whistler's house, and there learned from Whistler of the pressing need to raise some money for the use of his sick wife, who was then in Tacoma, Wash., in ill health. The following day, July 12th, according to the witness Leonard, Whistler went to the cabin on Steadman avenue occupied by Bayne and Leonard, and, after adverting to his wife's illness, stated that he was in urgent need of money for her benefit, and then produced a deed which expressed $1 as the consideration, and also contained a description of the property. He told Bayne that he could sell the claim for $200—implying the interests of both himself and Bayne—and upon his representations he secured the signature of Bayne to the deed. Whistler at no

4 A.R.—2

time before the delivery of the deed or thereafter disclosed to Bayne the prospects or values obtained by the lessees of the ground from the claim the previous winter, or referred to the leases thereof given by him, and gave him no other information concerning said claim whereby Bayne could judge of its worth. According to Bayne's testimony, he suggested, after the signing of the deed, that this transfer ought to cancel the $260 which Whistler had paid on the Dahl creek fraction sold from them under the foreclosure decree, and then this sum was written into the deed in place of $1 as the consideration. Bayne, at the time of the execution of the deed, knew of Mrs. Whistler's continued illness. In a previous year he had assisted in nursing and attending on her in her illness, and was moved by his high regard for her and by his sympathy for his friend, her husband, to sign the deed, believing that, as he says, he was making a donation of his interest to the grantee.

Plaintiff further testifies that in his belief Whistler, besides, was then indebted to him on unsettled mutual accounts involving their mining business. So far as the evidence shows, Bayne during that season received no information that Whistler had not sold the claim transferred to him, except what the two friends of him and Whistler, Mr. Fell and Mr. Sturtevant, afterwards gave him. They told him in the summer of 1905 that pay as much as six bits to the pan had been taken from the claim the previous winter. Bayne then, having full confidence in Whistler, repelled the insinuations by these two men of their belief that Whistler had not sold the claim and grew indignant at their implied reflections upon the good faith and integrity of his friend and agent.

In 1906 Bayne left Alaska, spending the winter in the Cascade Mountains, and in the fall of 1907 returning to Seattle, where he again met Fell and Sturtevant. In their conversation then had they informed him of the litigation then pending over the Wonder creek claim, started by McDonald and Carter against Whistler alone, in order to have the district court at Nome declare a trust in their favor for the two-thirds of said claim. Whistler, at the institution of that suit, acted

as sole owner of the claim. They also told him of the very considerable sums of money which had been taken from the ground by Whistler and Bayne's lessees. Previous to this meeting Bayne had no information of that suit having been instituted; he (Bayne) not having been made a party to the suit, though according to the record he was an owner of part of the claim. This was the first definite information of the amount of wealth which had been taken from the claim. The amount by them named was $12,000. He then consulted an attorney at Seattle, and in July, 1908, he began this action.

George B. Grigsby, of Nome, E. Coke Hill, of Iditarod, and N. H. Castle, of Nome, for plaintiff.

John Rustgard, of Juneau, Elwood Bruner, of Sacramento, Cal., and J. Allison Bruner, of Nome, for defendant.

MOORE, District Judge. The following facts stand undisputed by the evidence:

(1) Bayne's ownership of undivided half interest in the Wonder creek claim.

(2) Purchase by Whistler of undivided half of Bayne's interest in Dahl creek fraction for $1,000, of which $260 was paid in cash, with full knowledge of existing mortgage on the whole of property and other property.

(3) The close social intimacy and the deference of Bayne to Whistler's judgment in business matters; the general management of Bayne's interests by Whistler and his reliance upon Whistler's experience.

(4) Leases by Whistler of Wonder creek claim during Bayne's absence; signature to lease to Stipek and others of Bayne "by Whistler"; prospecting of claim in winter of 1904–05 under said leases; discovery of some values; receipt of royalty of $30 from the lessees who operated the claim that winter; no disclosures to Bayne of the facts of leasing, prospecting, discovery of values, or receipt of royalties.

(5) Aggregate of over $144,000 derived from No. 6 on Wonder creek.

(6) Continued holding by Whistler of the interest conveyed by Bayne.

(7) Ignorance by Bayne until fall of 1907 of the McDonald-Whistler litigation and of the judgment rendered therein.

The disputed facts at the trial are the following:

(1) The giving of the power of attorney from Bayne to Whistler.

(2) The time of the insertion of the alleged consideration of $260 in the deed.

(3) The substance of the conversation immediately prior to the passing of the deed.

(4) The character of the notice whereby defendant appears to claim plaintiff was put upon inquiry.

The plaintiff's evidence is explicit that he gave a written power of attorney to the defendant in 1904, and he gives the details of the time, place, and circumstances of its preparation and delivery. His testimony on this head is corroborated by that of attorney Geo. D. Campbell, who says that in the winter of 1904–05 Whistler told him he had Bayne's power of attorney.

W. H. Sturtevant also testified that, when he was lessee of Bayne and Whistler's Dahl creek fraction, Whistler more than once told him that he had Bayne's general power of attorney. This testimony, combined with the notable fact that Whistler assumed to act and did act as Bayne's agent in giving a lease, gives such force to the evidence of the plaintiff on this particular point that the defendant's denial of his having a power of attorney cannot commend belief, and I find that issue in favor of the plaintiff.

I do not deem that the time of the insertion of the words and figures "two hundred and sixty dollars ($260)" in the deed an element of great importance in the decision of this controversy, since both parties agree that the words were actually inserted before the delivery of the deed.

In respect to Bayne's account of what took place prior to the signing of the deed at Bayne's Steadman avenue cabin, Bayne is supported by the witness Leonard. The decided weight of the testimony on this point is on the side of the plaintiff.

The testimony as to the extent and the character of notice of Whistler's operations on the claim in dispute in the winter

of 1904–05 all comes from the mouths of plaintiff's witnesses, and when brought together, item by item, simply shows that Bayne paid but little heed to what his friends Fell and Sturtevant told him of the reports about the claim, and that, despite these reports, he held to the belief that his friend Whistler had not betrayed his confidence. On the part of Whistler, at all times after Bayne's return from Seattle in 1905, there was a studied failure to even make a single mention of the lease of the claim he had given in the winter of 1904–05 to Stipek and others, or of the lease subsequently given by him to Hansen, Olsen, and Warner in April, 1905, upon the surrender of the Stipek lease, and of the developments made by the last-mentioned lessees, and of the money extracted by them from the claim, and of his having received royalty from them amounting to $30. So, also, there is an entire absence of any testimony tending to prove that any information, from which Bayne could have gathered these facts for himself, was given directly or otherwise to Bayne by Whistler. Why, then, was Whistler thus silent? The answer to the question can only be that he feared that, if he enlightened Bayne concerning his giving of the leases and the result of the operations of the lessees, Bayne would resolve to refuse the conveyance of his interest in the claim.

The relation of principal and attorney in fact or agent having still subsisted between the parties, it was the duty of Whistler, before taking the conveyance from Bayne, to make full disclosure to Bayne of the giving of the two leases and of the amount of gold produced from the claim by the lessees under both leases, and to report, as such attorney in fact, whether or not the lessees were willing to continue their working of the ground, and what promise the leased ground gave of yet better returns when further explored. This duty Whistler wholly violated by purposely, as his acts clearly indicate, leading Bayne to make the conveyance in ignorance of the true condition and value of his interest in the claim conveyed, and upon discovery of the fraud, and within a reasonable time thereafter, it was the right of Bayne at his option to avoid the transaction.

Having in view the duty of an agent who, under any kind of agreement with his principal, receives any part of the property which is the subject of his trust, Pomeroy in his Equity Jurisprudence, §§ 958, 959, says:

"The mere fact that a reasonable consideration is paid, and that no undue advantage is taken, is not of itself sufficient. Any unfairness, any underhanded dealing, any use of knowledge not communicated to the principal, any lack of the perfect good faith which equity requires, renders the transaction voidable, so that it will be set aside at the option of the principal."

Whistler concealed from Bayne the fact that he had in his possession as royalty $30, of which one-half was Bayne's received under a lease still in life at the date of the deed to Whistler and not to expire for many months thereafter. It is maintained by Whistler that he paid $260 for the interest, but the evidence does not support the contention.

The sum of $260 had been paid to Bayne by Whistler for a one-half interest in the Dahl creek fraction, and, when the property was sold under execution upon a mortgage binding the fee, Whistler lost his interest in the fraction by the sale. There does not appear from the evidence to have been any contract, at any time after the purchase of this fraction, that Bayne was to indemnify Whistler for the loss of the $260, though it is said by Whistler in his evidence that Bayne subsequently agreed to reimburse to Whistler the $260 out of the steamer Research which was attached by the United States government and lost to its owner. These facts create no legal obligation on the part of Bayne to pay Whistler $260, the consideration inserted in the deed for Bayne's interest in No. 6 Wonder creek. Even if Bayne had been legally liable to Whistler for the payment of the $260, under the citation from Pomeroy above quoted, the remedial right of Bayne asserted in this action in no wise would be affected by the indebtedness.

By Whistler's undisputed assumption of authority to act as Bayne's agent in respect to the very property involved in this suit, he incurred the responsibilities of an agent, and must be so regarded.

"Where an unequivocal act of agency by a party is shown, whether it is by actual employment of the parties or as a volunteer can make no difference as to his responsibilities growing out of that relation." Dennis v. McClagg, 32 Ill. 429; 31 Cyc. 1244b.

The part taken by Whistler in the principal transaction presented by the evidence raises a presumption of wrong, and brings his acts within one species of constructive fraud, and throws on him the burden of proving his innocence and the absence of fault. Pomeroy's Eq. Jur. § 922.

The principles governing that species of constructive fraud "extend to all persons who occupy a position of trust and confidence, of influence and dependence, in fact as well as in law." Pom. Eq. Jur. § 963 and notes; Kyle v. Perdue, 95 Ala. 579, 10 South. 103; King v. Remington, 36 Minn. 15, 29 N. W. 359; Cannon v. Gilmer, 135 Ala. 302, 33 South. 659.

The defendant held a position, not only of trust and confidence, but, on account of his forceful character and his long association with the plaintiff, he stands out in the evidence as having acquired a degree of dominance over the plaintiff. The rights of the parties to be adjudicated, therefore, spring out of both these relations, and, as already indicated, the deed in question should be avoided and canceled, unless the plaintiff has lost his right to the remedy sought by the action because of his ratification of the deed, or by his acquiescence in the rights acquired by means of said deed, or by his laches or delay in adversely asserting his rights to the interest conveyed by the deed.

The defendant in his amended answer alleges as a defense facts from which it may be inferred that these defenses are relied on to defeat the action. These are the defenses, also, that were upheld at the trial. The burden of proving knowledge of the fraud and the time of its discovery rests upon the defendant. Pence v. Langdon, 99 U. S. 582, 25 L. Ed. 420. Under the facts and circumstances of this case, it was not incumbent on the plaintiff to rescind, or take steps to rescind, the deed until he gained actual knowledge of the fraud practiced on him.

"It is not enough to show that he might have known or suspected it from data within his reach." Pence v. Langdon, supra, 99 U. S. 581, 25 L. Ed. 420.

The defense of ratification of the deed by the plaintiff is wholly devoid of merit because it involves a deliberate act intended to renew a transaction known to be voidable. No such deliberate intention entering into the act of the plaintiff can be inferred from the evidence.

"Acquiescence and waiver," says Justice Swayne in Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420, "are always questions of fact. There can be neither without knowledge; * * * one cannot waive or acquiesce in a wrong while ignorant that it has been committed. Current suspicion and rumor are not enough. There must be knowledge."

Here no actual knowledge that defendant concealed facts which he should have disclosed is shown other than that gained from the hearsay talk of Fell and Sturtevant at Nome. The defendant does not contend that any report from which the plaintiff could infer Whistler's wrongdoing reached the plaintiff from any other source than Fell and Sturtevant, and in the summer of 1905 no work was being done on the Wonder creek claim. Work on the claim was not resumed until November, 1905, after Bayne had again left Nome for the winter. I hold, therefore, that the plaintiff's action was not barred by acquiescence on his part in the wrong suffered by him.

Next, what say the authorities concerning the defense of laches? In an action to set aside a deed made between parties standing in a confidential relation with each other, the defense of laches is not regarded with favor. Ross v. Payson, 160 Ill. 349, 43 N. E. 399; Sears v. Hicklin, 13 Colo. 143, 21 Pac. 1022; Gardner v. Crockett, 58 Ga. 603.

"Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly within limits allowed by law." 6 Cyc. 301.

The condition of Whistler, it cannot be said, has changed in any manner to his prejudice as a result of any act of Bayne.

Much has been made of the fact that Whistler was made defendant in an action brought by McDonald and Carter to compel Whistler to convey the two-thirds of his interest in the Wonder creek claim to them. He was put to the expense

of defending this action, it is true, but Bayne was not a party to it. Whistler, in defending the action, was working, not in Bayne's interest, but to retain as his own as much of the gold produced from the claim as possible. His warfare with the parties to that action was waged by him in his own interest. As it is, Whistler spent in his own defense a part of the money which Bayne was entitled to. It is difficult to see how Bayne should meet defeat in this action because Whistler, in defending the McDonald action, upheld an interest as his own. which in fact belonged equitably to Bayne. Whistler has been put to no expense for preserving the title to the ground under the mining laws. He has, however, collected royalty from the lessees, and thus far has failed to account to Bayne for the small sum in his possession at the very day he induced Bayne to execute the deed for his interest in the claim.

As to the dispatch with which a party to a contract affected by the fraud of the other party to the contract shall, after being apprised of the fraud, move to obtain a rescission of the contract, Justice Swayne, in Pence v. Langdon, supra, again says:

"When fully advised he must decide and act with reasonable dispatch, * * * but the wrongdoer cannot make extreme vigilance and promptitude conditions of rescission. It does not lie in his mouth to complain of delay."

See, also, Sears v. Hicklin, supra, 13 Colo. 143, 21 Pac. 1022; Arkins v. Arkins, 20 Colo. App. 123, 77 Pac. 256; Thompson v. Marshall, 36 Ala. 504, 76 Am. Dec. 328.

From a careful review of the testimony I conclude that the plaintiff is chargeable with knowledge of the imposition practiced on him from the date of his receiving information from Fell and Sturtevant of the suit against Whistler brought by McDonald and Carter to impress a trust in their favor on Whistler's interest in the Wonder creek claim. I discover no lack of vigilance and diligence on the plaintiff's part in protecting his interests after that date, and that he is innocent of the laches imputed to him by the respondent in this suit.

While I find the issues of fact raised by the pleadings mainly in favor of the plaintiff, I cannot find from the evidence

that the defendant, when he procured the deed from the plaintiff, well knew that the Wonder creek claim was very valuable. The evidence shows the total value of the gold taken from the claim by the lessees hereinbefore named to be $144,120.

Findings in accordance with this decision will be signed by the court. The court will further decree that an accounting be made by the defendant at a future hearing by the court, and, after the hearing had, will further direct the defendant to deliver up the deed for cancellation, and that it be canceled. The relief by injunction prayed for will not be granted, unless, upon a further showing made by the plaintiff of grounds therefor, an injunction may be deemed just and proper.