## DONOGHUE v. LEE et al. (No. 7961.)

(Court of Civil Appeals of Texas. Galveston. Jan. 18, 1921.)

**1. Corporations ⬦110—Evidence held to prove waiver of right to cancel stock issued to trustee for employé on termination of employment.**

In action by former employé of corporation against the corporation and another to whom corporation issued stock, to be held in trust for employé until specified date, to recover stock, in which it was claimed by the corporation and trustee that the stock had been issued on the condition that on termination of employment previous to such date the trustee could elect to cancel stock, and that stock had been canceled because of termination of employment prior to specified date, evidence *held* to sustain finding that the trustee had knowledge of employé's cessation of employment for a sufficiently long time without canceling the stock to have waived the right to cancel stock.

**2. Corporations ⬦110—Right to cancel stock issued to trustee for employé's benefit waived by failure to cancel on termination of employment.**

Corporation which had issued stock to trustee to be delivered to employé on said date with right of cancellation on termination of employment prior to such date *held* to have had knowledge of employé's cessation of employment for a sufficient period of time prior to cancellation to have waived the right of cancellation, since the records of the corporation showed that employé was no longer in its employment, and since the corporation was charged with knowledge of such records.

**3. Evidence ⬦76—Trustee holding stock for employé with right to cancel on termination of employment held to have knowledge of termination.**

In former employé's action to recover stock from trustee to whom corporation issued stock to be held for employé until specified date with right of cancellation on termination of employment before such date, in which employé claimed that right of cancellation was waived by failure to cancel with knowledge of termination of employment, the trustee, being in possession of facts as to whether it had knowledge of cessation of employment, and not having testified relating thereto, will be held as a matter of law to have had knowledge of such termination of employment.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by W. E. Lee against T. J. Donoghue and the Texas Company. Judgment for the defendant Texas Company, and for the plaintiff against defendant Donoghue, and defendant Donoghue appeals, and plaintiff cross-appeals from judgment for defendant Texas Company. Judgment affirmed as to defendant Donoghue, but reversed and rendered as to defendant Texas Company.

Baker, Botts, Parker & Garwood, T. J. Lawhon, Edwin B. Parker, and Robt. A. John, all of Houston, for appellant.

J. W. Parker and Andrews, Streetman, Logue & Mobley, all of Houston, for appellee Lee.

Baker, Botts, Parker & Garwood and T. J. Lawhon, all of Houston, for appellee Texas Co.

GRAVES, J. On August 6, 1918, Lee sued the Texas Company, a corporation, and Donoghue, an individual, declaring himself to be the owner and entitled to the possession of 13½ shares of the corporation's capital stock of the par value of $100 per share, which he claimed he had bought and paid face value for pursuant to the terms of a contract for such purchase between himself and the company. He averred that of this stock he first subscribed for nine shares in May, 1915, paying therefor in accordance with the terms of the offer, and that of the balance he subscribed for 1⁴/₅ shares on February 29, 1916, and 2.7 shares in November, 1916, making the final payment on these two allotments together on April 8, 1917; that the agreement between himself and the company had been that it would issue and place the stock in the hands of Donoghue as trustee to be delivered to him on or before June 30, 1918.

·On information and belief he further charged that the stock had in fact been issued and delivered to Donoghue, who held it in trust for him, or, if that had not been done, that the Texas Company should have so issued and placed the stock in Donoghue's hands; wherefore, and in either event, the defendants and each of them were under the duty of delivering the stock to plaintiff. He sought a judgment against both defendants "and each or either of them" decreeing a specific performance of the contract declared upon, ·and requiring that the stock be issued and delivered to him, or, in the alternative, under further averment that they had converted it in violation of their agreement and trust, that he have a recovery for its highest market value down to the date of trial of the cause.

The substance of this further statement as to the pleadings of the parties and the course and result of the trial, conceded by them all to be in the main correct, is, with only slight and immaterial changes, taken from the brief of appellant:

"Defendants, the Texas Company and T. J. Donoghue, trustee, jointly answered, admitting that plaintiff did subscribe for 9 shares of stock of the Texas Company, such subscription being according to and governed by a certain plan of the stockholders and directors of the Texas Company allotting 10,000 shares of its stock, at a par value of $100 per share, to its employés, and to employés of its subsidiary and affiliated companies, the resolution of the

stockholders and resolution of directors making such allotment being attached to the answer and made a part of it, the resolution setting forth that the purpose of making the allotment was to establish and maintain desirable relations between employés and the company: Provided that all right, title, and interest to the stock should vest in a trustee, and that the employé should have no right, title or interest in the same prior to June 30, 1918: Provided, further, that an employé or subscriber ceasing to be in the service of the employing company with or without cause, at the eléction of the trustee, should cease to have any further right to the stock allotted him, and, in the event of such election, a subscriber should be entitled to demand and receive of the trustee all money actually paid by him on such stock, plus 6 per cent. interest thereon.

"That plaintiff, on September 30, 1915, the stock being allotted on May 1, 1915, left the service of the Producers' Oil Company, an affiliated company, and the trustee, on learning such fact, on May 21, 1918, in pursuance of the terms and of the authority vested in him by the resolution referred to, elected to cancel, and did cancel, plaintiff's stock subscription, and returned to plaintiff the amount of money actually paid in on the 13½ shares, plus 6 per cent. interest thereon, by reason of which plaintiff had no further right to the stock.

"By supplemental petition plaintiff alleged that he paid for in full 9 shares of the stock on September 30, 1915, and that thereafter defendant Donoghue, as trustee, under the terms of his trust, had no further right or control over such stock except to deliver same to him on June 30, 1918; that his ownership of the 9 shares gave him the right, which the defendants recognized and demanded payment therefor, to purchase at par and pay for the remainder of his total of 13½ shares, without reference to whether or not he had continued to be an employé, and that as a matter of fact he did purchase and pay in full for 1⅘ shares of such balance out of the issue of March, 1916, and 2.7 shares of the issue of November, 1916; that Donoghue did not have the power to cancel plaintiff's right to any of the 13½ shares, the provisions of the resolutions in reference to the right of the trustee to cancel having no application to stock paid for in full; that plaintiff left the service of the Producers' Oil Company September 30, 1915, of which Donoghue, trustee, had knowledge, and that it was the duty of the trustee to act promptly in canceling the stock, notwithstanding which he did not attempt to cancel it until May 21, 1918, during which intervening time plaintiff's money was not returned, and dividends were paid on the stock, wherefore Donoghue, trustee, had waived his right to cancel it; that the Texas Company had absorbed the Producers' Oil Company before the attempted cancellation, rendering it impossible for plaintiff to be employed by the Producers' Oil Company; therefore the right to cancel became invalid and of no effect.

"Defendants, by supplemental answer, alleged that the trustee, Donoghue, did not know that plaintiff had left the service of the Producers' Oil Company until May 21, 1918, at which time the trustee immediately elected to cancel, and did cancel, plaintiff's stock subscription, at once notifying him thereof; that after September 30, 1918, said Donoghue, the trustee, had dealt with plaintiff under the belief that he was an employé of the Producers' Oil Company, and that plaintiff knew Donoghue was so dealing with him; that plaintiff not only failed to advise the trustee of the fact that he had ceased to be an employé of the Producers' Oil Company, but that he affirmatively concealed such fact, in that during that period defendant Donoghue, trustee, wrote plaintiff, advising him that he (Donoghue) understood and was acting on the belief that plaintiff was still in the employ of the Producers' Oil Company, and asked plaintiff to advise him if he was incorrect; that plaintiff remained silent, when, under the circumstances, it was his duty to speak, thereby misleading defendant Donoghue into a continued reliance upon the belief that plaintiff was so employed.

"The case was tried before the court without the intervention of a jury on October 16, 1919, and on November 28th the court rendered judgment against defendant Donoghue, directing that he deliver to plaintiff 13½ shares of the capital stock of the Texas Company of the par value of $100 ten days after adjournment of court, or after judgment becomes final, failing in which delivery it was decreed that plaintiff, Lee, have and recover against the defendant Donoghue the sum of $3,867.50, the same being the highest market value of the said stock at Houston, Tex., on the date of the trial of this case. Judgment was found in favor of the Texas Company."

Defendant Donoghue and the plaintiff Lee appeal, the latter complaining by cross-assignments of the court's failure to render judgment in his favor against the Texas Company.

At appellant Donoghue's request the court below filed conclusions of fact and law, from which it is apparent that the judgment in Lee's favor against him was grounded upon this finding:

"I find as a fact that at some time subsequent to April 12, 1917, and prior to the 21st day of May, 1918, the defendant T. J. Donoghue did acquire knowledge that the said plaintiff had ceased to be in the employment of the Producers' Oil Company, and that after acquiring such knowledge said Donoghue failed to assert the cancellation of said stock, and waived the right to cancel the same. My finding to this effect is based upon my finding that there was sufficient evidence, taking into consideration all of the facts and circumstances, to raise an issue of fact as to whether said Donoghue, trustee, had such knowledge at such time, and the facts and circumstances together raising such issue, the failure of said Donoghue to testify upon the trial of the case was taken into consideration by me, and such failure, together with the evidence raising such issue, leads me to the conclusion that said Donoghue did possess such knowledge."

Accordingly, in so far as concerns appellant, the correctness of this adverse judgment depends upon whether or not the evi-

dence was sufficient to support the quoted finding.

Through proper assignments he very ably contends here that not only was the essential part of this finding—that is, that Donoghue, prior to May 21, 1918, had knowledge of the cessation of Lee's employment—so against the great weight and preponderance of the evidence as to be manifestly unreasonable and wrong, but that it was wholly without support in the testimony.

[1] After a painstaking review of the statement of facts, this court is unable to agree with him, concluding rather that the trial court was not without sufficient basis for the finding. That not being deemed indispensable, no résumé of the evidence both pro and con upon the issue will be attempted here, but, following what is regarded as a proper practice for an appellate court, only so much of it as is thought to justify the view taken below will be stated:

The contract for the purchase of the stock sued upon was made between Lee and the Texas Company. Resolutions providing for the offering of such employés' stock for sale were passed both by the company's stockholders and its board of directors, the main recitations of which have been mentioned in the preceding summary of the pleadings, the proposition from the company being presented to Lee on May 1, 1915, in a letter signed by one of its officers. This letter contained some questions to be answered touching the number of shares, the terms of payment, etc., together with a subscription to be signed, with all of which Lee complied. Under these instruments thus constituting the agreement between the parties, the company named the trustee, Donoghue, and reserved the right to supersede him "at the will of the board of directors," it being further provided that "the board of directors may by resolution designate a successor who shall succeed to all of the rights and powers of the trustee named herein." Payments made by Lee of different installments on this stock to the trustee were by the latter immediately turned over to the company, in particular checks for $450 and $447.11, sent respectively August 16, 1915, and April 7, 1917. On May 10, 1915, Lee wrote a letter to S. J. Payne, assistant secretary of the company, inquiring whether on paying his 9 shares out in full in January, 1916, he could then get a certificate for it, or would he have to wait till June 30, 1918, to which he received replies from both Donoghue, trustee, and Payne, assistant secretary, the latter saying in part: "Answering that part of your letter of May 10th which was not answered by Mr. T. J. Donoghue, trustee," etc.

Lee was field superintendent at Sour Lake, Tex., of the Producers' Oil Company, a subsidiary of the Texas Company, having some 75 or 80 employés under him. He severed his employment with that company on Septem-ber 30, 1915, by sending a written resignation to its general superintendent, receiving a written acknowledgment of it, as well as a letter of regret over his leaving their employ from the company's treasurer. In addition, his subemployés joined in a written testimonial to him at the time of his resignation. He was never employed by the Texas Company direct, nor any other one of its subsidiaries.

On November 20, 1917, the Texas Company, having purchased all the property and taken over all the employés of the Producers' Oil Company absorbed the latter, it being thus dissolved as a corporation.

May 21, 1918, Donoghue notified Lee of the cancellation of his stock subscription in the following letter:

"Houston, Texas, May 21, 1918.

"Mr. W. E. Lee, Sour Lake, Texas—Dear Sir: You having left the service of the Texas Company, under the terms of your employés' stock obligation, it becomes necessary to cancel same and return you your payments plus 6% interest, less such advances as have been made. I am inclosing detailed statement of the refund due you and my check to cover.

"Your truly,

"[Signed]          T. J. Donoghue, Trustee.

"By A. H. Blake."

Lee testified that the Texas Company paid him dividends on this stock from and after January 1, 1916, down to as late as March 31, 1918, in accord with the refund statement referred to in the letter to him just copied. This showed that his first 9 shares drew dividends from January 1, 1916, the 1⅘ shares from October 1, 1916; and the 2.7 shares from April 1, 1917; hence the entire 13½ shares participated in the dividends from and after this last-mentioned date, and at least 2 of these were paid after the Texas Company had absorbed the Producers' Oil Company, that is, those paid December 31, 1917, and March 31, 1918. All dividends together with 6 per cent. interest per annum thereon from the dates of payment thereof to Lee had, however, been deducted in this statement, and the amount so tendered him as a refund represented merely the sums he had paid in for the stock with like interest from the dates of such payment added. He declined the refund offered, and returned the check covering it.

Appellant Donoghue did not testify upon the trial of the cause. Neither he nor the Texas Company alleged that any part of the 13½ shares of stock so allotted to appellee Lee had ever been issued or delivered by the Texas Company to Donoghue as trustee, nor was there any proof that such action had ever been taken, although Lee had paid in full for the 9 shares September 30, 1915, and the other 4½ shares April 8, 1917.

Among other duties of the trustee, as provided by the resolutions of the board of directors, was this:

"Subject to the approval of the board of directors the right to reallot and sell stock of said $10,000 not subscribed for herunder, or subscribed for, but later surrendered or forfeited to the trustee, or acquired by the trustee at forced sale."

[2] In our opinion not only did the state of the evidence, as thus indicated, justify the trial court's finding of knowledge, waiver, and consequent liability on the part of appellant Donoghue, but also called for like conclusions as against his colitigant, the Texas Company. It may be that, considered wholly apart from appellant's failure to testify, the preponderance lay the other way, but in the setting otherwise disclosed that circumstance became one of powerful portent against him. Notwithstanding his lack of personal information on April 12, 1917, as to the then existing fact of the appellee's nonemployment, which the court below in another finding stated he had, it does not by any means follow that, under all the facts and circumstances thereafter brought home to and tending to apprise or charge him with knowledge of the fact, he could still have been ignorant of it as late as May 21, 1918. As such a trustee under original appointment by and subject at all subsequent times to the continuing authority of the Texas Company, the opportunity for such information was ever ready at his hand. His obligations to both parties to the trust agreement he was charged with seeing faithfully performed made it his bounden duty to know their status toward each other throughout the period of his own responsibility. The intimate relationship the foregoing findings have shown to have actually existed between himself and the source of his authority in the matter, and, finally, the demonstrated circumstance that he did know other and very closely related facts—such for instance as that Lee had been corresponding with the company direct covering this stock—taken and considered as a composite whole, laid a premise from which the further conclusion that he must in the meantime have become aware of Lee's retirement as an employé might reasonably and naturally have been drawn.

[3] Now can it be normally and naturally conceived, for example, after what has thus been shown to have transpired, that Donoghue, the trustee of its own designation and holding absolutely at its sufferance from and after November 20, 1917, did not know that the Texas Company had absorbed Lee's immediate employer and its own subsidiary, the Producers' Company, and had taken over all its property and employés? And if he became advised of that at any time between the date of its consummation on November 20, 1917, and May 21, 1918, his duties as such trustee confessedly subsisting throughout the intervening period, how, under the added fact that the Texas Company's books and records which must perforce of his relation-

ship have been available to him, would have shown Lee to be no longer employed by it or any of its dependencies, can the inference be other than inevitable that he sensed that (to him) fatal fact also? One may not willfully shut his eyes to what he might readily and ought to have known. Trust Co. v. Pruett, 184 S. W. 720; Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420.

And the predicate for such an inference was amply laid by the plaintiff below, since in making out his case he introduced the essential contributing facts hereinbefore recited. The quoted finding of the trial court, therefore, might well have been founded upon a declaration of the law as made by this court in the case of Texas Co. v. Chas. Clarke & Co., 182 S. W. 353, as follows:

"When a plaintiff has produced evidence sufficient to raise an issue as to the truth of his claim, and it appears from the nature of the case and the circumstances disclosed by the evidence that defendant is in possession of evidence which will show whether or not the inferences which can legitimately be drawn from plaintiff's evidence are true, and does not offer it, it is a fair and legitimate inference that the evidence so withheld by the defendant would, if produced, confirm the inferences arising from plaintiff's evidence. In such a case the failure of defendant to produce the evidence can properly be considered in determining the issues raised by plaintiff's evidence, and for this purpose it may be said to have affirmative probative force."

The application of it here emphasizes with peculiar force the reason that doubtless underlies the rule thus announced; for appellant, by merely going upon the witness stand and denying the knowledge so inferentially imputed to him, might have defeated the appellee's entire cause of action.

Moreover, the right to cancel the stock, if any ever existed, arose at the time of Lee's resignation on September 30, 1915. The undisputed evidence shows that no attempt at cancellation was ever made except and until that of Donoghue, trustee, in his quoted letter of May 21, 1918. The delay is not successfully accounted for. See Black on Rescission and Cancellation, § 671. There were no allegations explaining it, and the proof failed to disclose adequate excuse or reason for it. In argument it is said Lee misled the trustee into believing that he had continued to be an employé, but it is not thought this suggestion is sustained. True, on April 12, 1917, a letter to Lee from the trustee's office acknowledging the final payment on his entire allotment of stock concluded thus:

"It is my understanding you are still in the service of the Producers' Oil Company. If this is incorrect, I would be glad to have advice from you at once.

"Yours truly,

"AHB-LEO    J. T. Donoghue, Trustee,

"Enc.                                    By———."

And Lee made no reply to it. All this stock at that time, however, as just stated, had been fully paid for, and his contract for its purchase with the Texas Company contained this provision:

"Provided, however, that after a subscriber shall have paid up his stock in full, which may be done at any time, the same shall not thereafter be pledged or assigned by the trustee for any purpose, and any subscriber, after so paying up his stock in full, shall be entitled to receive from the trustee promptly any dividends collected by the trustee thereon."

Testifying at length about this matter at the trial, after freely admitting that he made no answer and had no other reason for not so doing than is embodied in this response, he said:

"I hadn't the least idea at that time but that Mr. Donoghue knew I had left the employment of the company; hadn't the least idea whatever. I was sure in my mind that Mr. Donoghue surely must have known that I had left the employ of the company."

The presumption here is that the trial court credited and accepted this explanation, and we are unprepared, even if that were our province, to say it was not sufficient. It will be noted that neither was this letter nor the one of May 21st attempting to declare the forfeiture, nor in fact was any other appearing in the entire controversy as emanating from the trustee's office, signed by Mr. Donoghue himself, but all were signed by A. H. Blake, apparently connected in some undisclosed way with his office. Lee would have been justified in feeling, as indeed he repeatedly testified he did, that he saw no occasion to reply to such a question about the stock he had already paid for in full, especially since he could not conceive that Mr. Donoghue himself did not know that he had ceased to be employed by the Producers' Company.

As concerns the Texas Company, obviously, from what has gone before, the judgment in its favor could not have been predicated upon the claimed cancellation. Not only were all the other facts and circumstances tending to show a knowledge and waiver of the nonemployment on the part of its trustee equally applicable and forceful against it, but, from having taken over all the employés of the Producers' Company, it was necessarily charged with knowledge of what its own books and records must needs have shown, that Lee was not at that time one of them.

The actual ground for the judgment favorable to it, however, seems to have been an assumption that the Texas Company had been paid in full for the 13½ shares of stock, had issued and delivered it to Donoghue as trustee in accord with the promulgated plan, and so, having parted with all title to and control over it long prior to the claimed cancellation, had no further concern in the matter. But, as has been before pointed out, there is in the record no warrant for this conclusion. Neither defendant below even pleaded that these 13½ shares had ever been delivered to Donoghue, trustee, but merely set up what the subscription plan adopted was attaching the resolution showing it to their answers; nor was there any evidence of such a delivery. Lee's allegation did not supply the missing link, since he simply charged upon information and belief that issuance and delivery had taken place, praying alternatively, however, that that he be decreed in his favor against both defendants.

At all events, we conclude from the whole body of facts and circumstances in evidence that the failure to issue and deliver the stock to the appellee was a situation for which both his antagonists were legally responsible. So much of the judgment as is in his favor against the appellant Donoghue is therefore affirmed, while that denying him any recovery against the Texas Company is reversed, and it is here ordered that he have a like judgment in all respects against it too. Decree has been directed accordingly.

The trial court's judgment affirmed as to Donoghue, but reversed and rendered as to the Texas Company.