The **JOHNS HOPKINS UNIVERSITY,**
Appellee,

v.

**William E. HUTTON et al., Appellants.**

No. 72–1995.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1973.

Decided Dec. 4, 1973.

Certiorari Denied April 1, 1974.
See 94 S.Ct. 1622, 1623.

John A. Wilson, New York City (Michael J. DeSantis, Lawrence G. Golde, John F. King and Shearman & Sterling, New York City, on brief), for appellants.

John Henry Lewin and Edmund P. Dandridge, Jr., Baltimore, Md. (Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellee.

Before RUSSELL and FIELD, Circuit Judges, and BRYAN, District Judge.

FIELD, Circuit Judge:

In this case which was before us over three years ago, W. E. Hutton & Company ("Hutton") now appeals from a summary judgment of rescission in favor of the plaintiff, The Johns Hopkins University ("Hopkins"), granted on counts II, III and V of Hopkins' amended complaint. Based upon the charge that Hutton's employee, Gilbert H. LaPiere, had been guilty of misrepresentations and nondisclosure incident to Hopkins' purchase of an oil and gas production payment from Trice Production Company, Hopkins' amended complaint was framed in seven counts: (I) Section

12(2) of the Securities Act of 1933 [1]; (II) Section 10(b) of the Securities Exchange Act of 1934 [2] and Rule 10b–3 of the Securities and Exchange Commission [3]; (III) Section 10(b) of the '34 Act and Rule 10b–5 of the Commission [4]; (IV) Section 15(c)(1) of the '34 Act [5]; (V) Section 17(a) of the '33 Act [6]; and (VI) and (VII) under the common law for (a) false representation and fraudulent conduct and (b) false representations negligently made with reckless indifference as to their truth.

On the former appeal [7] we had occasion to review the action of the district court in granting Hopkins' motion for summary judgment on count I involving the alleged violation of Section 12(2) of the '33 Act. In our disposition of that appeal we found the production payment to be a "security" within the statutory definition of the '33 Act and further concluded that the undisputed facts warranted the summary finding that Hutton's violation of Section 12(2) of the '33 Act entitled Hopkins to rescission. However, we noted the presence of a material factual controversy upon the issue as to whether Hopkins had commenced its action within "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence" as required by Section 13 of the '33 Act.[8] We held that since Hutton had demanded a jury and the facts were susceptible of conflicting inferences on the issue of Hopkins' reasonable diligence, the issue under Section 13 should be submitted to a jury. To that end we remanded the case to the district court for further proceedings consistent with our opinion.

Upon remand, for some reason not at all clear to us, the district court did not proceed with the jury trial on the Section 13 issue under Count I. Instead, the court permitted Hopkins to press its claim for summary judgment as to liability only under counts II, III, and V of the complaint which were bottomed on Section 10(b) of the '34 Act and Section 17(a) of the '33 Act. Discerning support in our affirmance of facial liability under Section 12(2) on the former appeal, the district judge in an opinion filed in April of 1971 found that the undisputed facts sufficiently demonstrated the presence of the requisite elements of scienter and reliance and granted summary judgment in favor of Hopkins with regard to liability under the three counts in question.[9]

◼ We think the undisputed facts support the district court's summary finding of liability upon counts II, III and V. While our opinion on the former appeal was addressed only to the Section 12(2) claim, the undisputed evidence of LaPiere's misrepresentations and omissions to which we referred on that occasion would clearly supply the element of scienter necessary to support a cause of action under Sections 10(b) and 17. Reliance, of course, is not an operative element under the Section 12(2) count and we were not called upon to make a specific evaluation on that point in our former opinion. While the case of Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) has cast some doubt upon the part played by reliance in Rule 10b–5 cases, we do not find it necessary to concern ourselves with the dialogue of whether some degree of reliance is still a factor in face-to-face transactions involving misrepresentations and nondis-

1.  15 U.S.C. § 77*l*(2)

2.  15 U.S.C. § 78j(b)

3.  17 C.F.R. § 240.10b–3

4.  17 C.F.R. § 240.10b–5

5.  15 U.S.C. § 78*o*(c)(1)

6.  15 U.S.C. 77q(a)

7.  Johns Hopkins University v. Hutton, 422 F.2d 1124 (4 Cir. 1970).

8.  15 U.S.C. § 77m

9.  Johns Hopkins University v. Hutton, 326 F.Supp. 250 (D.C.Md.1971).

closure such as we presently have before us.[10] On the prior appeal we stated that "[i]nformation about future revenues was essential to Hopkins' decision to purchase, and this information was tainted by LaPiere's material misrepresentations and omissions," and assuming that in a case such as this some degree of reliance is necessary, we think the essentiality of the tainted information satisfies the accepted criteria of reliance which were delineated in List v. Fashion Park, Inc., 340 F.2d 457 (2 Cir. 1965). *See* Baumel v. Rosen, 283 F.Supp. 128, 140 (D.C.Md.1968), reversed on other grounds 412 F.2d 571 (4 Cir. 1969).

Having found Hopkins entitled to summary judgment with respect to liability, the district court proceeded to discuss at some length the nature of the relief to which Hopkins might be entitled. While at this juncture Hopkins had asked only for damages under counts II, III and V, the district judge explored the possibility of rescission and, adverting to our opinion in Baumel v. Rosen, 412 F.2d 571 (4 Cir. 1969), concluded that to obtain such relief "Hopkins must succeed at trial in establishing by the preponderance of the evidence that it demanded rescission 'within a reasonable time after discovery of the ground for rescission.'" The district judge determined that there was a triable issue of fact under count I relative to the Section 13 limitation issue, and also such a triable issue with respect to Hopkins' entitlement to rescission under counts II, III and V as to "whether Hopkins moved too slowly in its quest for rescission." As heretofore noted, Hopkins at that time had not asked for rescission with respect to counts II, III and V, and in the concluding paragraph of the opinion the district judge offered Hopkins the following options:

"Hopkins is hereby required to inform this Court and Hutton within fourteen (14) days from the date of this opinion (a) whether Hopkins is primarily seeking rescission under one or more of Counts I, II, III and V and/or any other count, and, secondarily, damages under one or more of Counts II–VII, inclusive, only if Hopkins is held not entitled to rescission under any count; or (b) whether Hopkins desires to opt for damages and forego its quest for rescission; or (c) whether Hopkins asks that the pending discovery and evidentiary questions, all of which apparently pertain entirely to damages, be determined by this Court before Hopkins makes the election posed by (a) and (b)." [11]

█ Responsive to this invitation, Hopkins advised the court by letter on April 20, 1971, that it was "primarily seeking rescission under counts II, III and V of the Complaint; secondly, rescission under count I; and damages under counts II, III and V only if Hopkins is not entitled to rescission under counts I, II, III and V." Some months thereafter, on January 7, 1972, with leave of the court, Hopkins filed an amendment to its complaint seeking, in addition to its demand for damages, relief by way of rescission on counts II through VII. The court also permitted Hutton to file an amendment to its answer alleging that Hopkins had failed to act with reasonable diligence in asserting rescission promptly and, additionally, was guilty of laches.[12] In its final opinion filed in

---

10. *See* Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880 (5 Cir. 1973); Chris-Craft Industries, Inc., v. Piper Aircraft Corp., 480 F.2d 341 (2 Cir. 1973), cert. denied 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973); *Cf.* Kasner v. H. Hentz & Co., 475 F.2d 119 (5 Cir. 1973), cert. denied 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 57 (1973), Ruder & Cross, Limitations on Civil Liability Under Rule 10b–5, Duke Law Journal, Vol. 1972:1125.

11. Johns Hopkins University v. Hutton, supra, Note 9, at 265 of 326 F.Supp.

12. The order entered on January 10, 1972, granting Hutton leave to amend its answer stated that it was "without prejudice to and without waiver of defendants' contentions set forth in their counsels' letter dated July 1, 1971, addressed to the court and on file." The letter referred to stated, *inter alia,* Hutton's contention that it was not required

March of 1972,[13] the district court reaffirmed its earlier conclusion that Hutton was "entitled to a jury trial in connection with any and all triable fact issues with regard to whether Hopkins is entitled to rescission (a) under Counts II, III and V in which Hopkins seeks relief pursuant to Section 10(b) of the Securities and Exchange Act of 1934 and Rules 10b–3 and 10b–5 promulgated thereunder, and also pursuant to Section 17(a) of the Securities Act of 1933, and/or (b) under Count I in which Hopkins seeks relief under Section 12(2) of the Securities Act of 1933, so long as Hopkins continues to hold in reserve, in the event Hopkins is held not entitled to rescission, its claim for damages under one or more Counts II–VII, inclusive, of Hopkins' complaint."[14]

■ The Court, and we think properly, recognized this right of Hutton to a jury trial under the rationale of Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); and Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). However, having recognized Hutton's theoretical right to a jury trial on these issues, the district judge concluded "that upon the current state of the record in this case and the undisputed facts disclosed by it," Hopkins was entitled to a summary grant of rescissory relief under counts II, III and V. In reaching this conclusion the district judge took the position that Hopkins' conduct in seeking rescission under Sections 10(b) and 17 should be appraised under criteria substantially different from those imposed by Section 12(2) and the related Section 13 requirement. Recognizing that the one year limitation under Section 13 is tested to a large degree upon an objective standard of reasonable diligence on the part of the buyer in making discovery of the fraud, the district court suggested that in the context of the 10(b) and 17 claims a subjective test should be applied and that Hutton had the burden of proving that Hopkins had actual notice of the fraud substantially in advance of the date on which it asserted rescission. Support for this distinction was found by the district judge in the case of Pence v. Langdon, 99 U.S. 578, 25 L.Ed. 420 (1878), as well as his studied analysis of our opinion in *Baumel*. We fail to find *Pence*, which involved the review of a trial court's instructions in an action at law, persuasive on the issue before us, and we think the district court's

---

to affirmatively plead Hopkins' failure to assert rescission promptly after receiving inquiry notice since Hopkins had the burden of proving this as an element of its action for rescission. The question of the burden of proof was not before us on the former appeal, but it appears that Hutton's position on this point is well taken.

We note that the courts have consistently held that compliance with the limitation provision of Section 13 of the '33 Act is an essential ingredient of a private action under Section 12(2) which must be affirmatively asserted by the plaintiff. Newberg v. American Dryer Corporation, 195 F.Supp. 345 (E.D.Pa.1961); Premier Industries v. Delaware Valley Financial Corp., 185 F.Supp. 694 (E.D.Pa.1960); Shonts v. Hirliman, 28 F.Supp. 478 (S.D.Cal.1939); Fischman v. Raytheon Mfg. Co., 9 F.R.D. 707 (S.D.N.Y. 1949), reversed on other grounds 188 F.2d 783 (2 Cir. 1951). Apparently this requirement of affirmative pleading under Section 13 has been applied in actions at law as well

as those equitable in nature. With respect to counts II–VII, in the general area of rescission it appears that the requirement of prompt action is an element of the plaintiff's case, and the burden is upon the rescinding party to show that he acted promptly in seeking rescission. *See* Friedman, Delay as a Bar to Rescission, Cornell Law Quarterly, Vol. 26 at 428, 452 (1941). The basis for placing this burden upon the rescinder is not addressed to the issue of liability, but stems from the drastic nature of the relief sought by the plaintiff, and it should be borne in mind that, failing rescission, the avenue of damages is still open to him. *See* Baumel v. Rosen, 412 F.2d 571 (4 Cir. 1969); *Cf.* Myzel v. Fields, 386 F.2d 718 (8 Cir. 1967), cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143.

13. Johns Hopkins University v. Hutton, 343 F.Supp. 245 (D.C.Md.1972).

14. Id. at 248.

reading of *Baumel* was much too restrictive.

■ Traditionally, federal equity doctrine has recognized that the discovery of fraud is either the date of actual discovery or the date on which the plaintiff in the exercise of reasonable diligence should have made such discovery. Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Bailey v. Glover, 88 U.S. (21 Wall) 342, 348, 22 L.Ed. 636 (1874). *See* Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807 (1879). "Full and complete knowledge of an alleged fraud or breach of contract is not essential to impose upon a would-be rescinder the necessity of acting promptly and diligently if he wishes to assert a rescission. It is enough that he has such notice of the facts as would impel a reasonable man in his position to make inquiry. Having such notice, he will be chargeable with knowledge of all the facts which inquiry would disclose." Friedman, Delay as a Bar to Rescission, 26 Cornell Law Quarterly, 426, 432 (April 1941). This principle is similarly stated in 3 Pomeroy's Equity Jurisprudence (5th Ed. 1941) § 917:

> "After he [the would-be rescinder] has obtained knowledge of the fraud, or has been informed of facts and circumstances from which such knowledge would be imputed to him, a delay in instituting judicial proceedings for relief, although for a less period than that prescribed by the statute of limitations, may be, and generally will be, regarded as an acquiesence * * *."

■ This objective approach has been uniformly applied by the courts in actions brought under both the 1933 and 1934 Securities Acts. In Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 8 (5 Cir. 1967), a case relied upon by Judge Butzner in his opinion on the former appeal, the court stated:

> "Insisting upon a subjective test of actual knowledge, appellant contends that the pertinent Florida statute of limitations did not commence to run until it discovered, on September 17, 1964, the material facts upon which it relies for a recovery of damages for a fraud perpetrated by appellees. This circuit, however, is committed to the more objective approach to the accrual of such an action, articulated in Goldenberg v. Bache & Co., 270 F.2d 675, 681 (5th Cir. 1959), as follows: 'Discovery' within the meaning of the statute, 15 U.S.C.A. § 78cc(b) * * * is to be determined, we think, according to an objective standard; that is, 'discovery' means either actual knowledge or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation." (Footnote omitted.)

Thus, it was not any unique factual contours of *Baumel* which provoked Judge Bryan to state the principle which we find applicable to the present case:

> "Rescission is a radical move, and the law exacts the election of that course to be asserted without wait. The demand is that advice of the determination be given within a reasonable time after discovery of the ground for rescission.
>
> This principle is stringently administered. *Reasonable time is inceptive from the receipt by the rescinder of word putting him on notice. It is then incumbent upon him to pick up the scent and nose to the source.* * * * (citation omitted). If the quest confirms the suspicion, then he must make decision with reasonable dispatch. Failing this, entitlement to rescission disappears." (Emphasis added) 412 F.2d, *supra*, at 574.

In substance we hold that Hopkins, in seeking rescission under Sections 10(b) and 17, was required to act with reasonable dispatch after it had either actual knowledge of the fraud or notice of facts which, in the exercise of due diligence, would have led to knowledge thereof.

■ The district judge referred to certain facts which had been developed

since his 1971 opinion and found that the record as amplified disclosed no delay on the part of Hopkins. In our opinion, the facts to which the district court referred represent grist for the mill of the jury similar to those detailed by Judge Butzner in his opinion on the first appeal; and since they are susceptible of conflicting inferences on the issue of reasonable diligence, that question *must* be submitted to the jury. "The concept of due diligence is not imprisoned within the frame of a rigid standard; it is protean in application. * * * Inevitably the factual issue of due diligence involves, to some extent at least, the state of mind of the person whose conduct is to be measured against this test and it is simply not feasible to resolve such an issue on motion for summary judgment." Azalea Meats, Inc. v. Muscat, *supra*, 386 F.2d at 9 & 10. This, of course, accords with the principle followed in this circuit that summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved * * * and this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusion to be drawn therefrom." Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4 Cir. 1950).

Finding summary judgment inappropriate on the issue of Hopkins' promptitude, we reverse the decree of the district court in that respect and remand for a jury trial upon the issue of whether Hopkins demanded rescission within a reasonable time after it had actual knowledge of the grounds for rescission or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of such grounds. Since this case has now been pending for over ten years, a final determination of the issues and the rights of the litigants should be made at the earliest possible date. To that end we also direct the district court to submit to the jury the issue with respect to the Section 13 limitation under the first count of the complaint in accordance with our mandate on the first appeal.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.