No. 12804

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

HAROLD J. JOHNSON and MAVIS M. JOHNSON,

Plaintiffs and Respondents,

-vs-

THOMAS JARRETT and SIGRID JARRETT,

Defendants and Appellants.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Yardley and Yardley, Livingston, Montana
Jack Yardley argued, Livingston, Montana
Holter and Heath, Bozeman, Montana
Robert M. Holter argued, Bozeman, Montana

For Respondents:

Jones, Olson, and Christensen, Billings, Montana
Gerald D. Christensen argued, Billings, Montana
William V. Moore appeared, Billings, Montana

---

Submitted: February, 2, 1976

Decided: MAR 2 5 1976

Filed: MAR 2 5 1976

_Thomas J. Kearney_
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This appeal is from a judgment in a quiet title action entered in the district court, Park County, determining the boundary between the parties' property.

Plaintiffs Johnson filed an action to quiet title to about 500 acres of land located in Section 15, Township 1 South, Range 12 East, M.P.M., Park County, Montana. This appeal arises over a controversy as to the boundary line separating the property of plaintiffs and defendants in Lot 5 of Section 15.

In 1899, all of Lot 5, Section 15, was owned by Timothy Murray. On July 8, 1899, he conveyed by deed to Susan A. Mendenhall:

> "All that portion of Lot Five (5) which is east of the wagon road leading from the Springdale Station on the Northern Pacific Railroad north to Hunters Hot Springs and north of the track of said railroad as now located."

Defendants Jarrett are the successors in interest to Susan A. Mendenhall, and the lands described in the 1899 deed.

On August 11, 1903, Timothy Murray deeded to James A. Murray:

> "All that portion of Lot Five (5) lying west of the wagon road from railroad to Hunters Hot Springs."

Plaintiffs Johnson are successors in interest to James A. Murray and the lands described in the 1903 deed.

The issue in the district court was the location of the wagon road described in both deeds as forming the boundary to the respective parties' portion of Lot 5.

Plaintiffs allege the "wagon road" is that certain wagon road running from Springdale Station to Hunters Hot Springs as shown on a United States Government Survey of July, 1886. This road ran in a roughly east - west direction through Lot 5 ending at a ferry across the Yellowstone River.

Defendants allege the "wagon road" is the present county

road running from the present Springdale to Hunters Hot Springs. (Mendenhall). This road runs north and south through Lot 5 to a bridge across the Yellowstone River.

At the present there is no physical evidence of the wagon road described in the 1886 survey.

Defendants introduced evidence of the move of the Springdale Station approximately two miles east on the Great Northern Line at some time between the year 1886 and 1898, with the present county road being built about the same time.

Defendants also testified the present county road is bounded on the east by fences which have existed in their present location for at least 35 years.

Plaintiffs and defendants agree that plaintiffs have never used any of Lot 5 east of the present county road, nor did defendants use any of the land west of the road.

The district court sitting without a jury, found in favor of plaintiffs' claim and entered judgment accordingly.

All post-judgment motions of defendants were denied, and they appealed to this Court.

At roughly the same time as defendants filed their reply/brief with this Court, one of defendants discovered certain official records of Park County and moved this Court for the introduction of new evidence or removal to the district court for further proceedings. Hearing was held on this motion January 10, 1975. On January 13, 1975, this Court, in a per curiam order, remanded the cause to the district court with instructions to permit defendants to file a motion for a new trial upon the ground of newly discovered evidence.

Rehearing was held on March 17, 1975, in the district court, Park County, without a jury. Defendants introduced evidence of a county road from Springdale to Mendenhall in 1890, to prove the existence of the present county road at its present

location and equating it to the wagon road described in the deeds. Plaintiffs challenged this evidence with testimony of a licensed land surveyor and the 1900 Park County assessment rolls for Lot 5.

The district court awarded judgment for plaintiffs and defendants appeal.

The issues presented for review by this Court are:

1. Did the district court err in determining the 1886 wagon road was the same "wagon road" as described in the 1899 and 1903 deeds, thereby failing to determine that defendants own all of Lot 5 east of the present county road?

2. Did plaintiffs and their predecessors in interest acquiesce in and accept the present county road as the boundary line between the respective portions of Lot 5?

3. Did the district court err in failing to find the proper location of the "wagon road" through Lot 5 in the years 1899 and 1903 was as set forth in the Park County official records discovered subsequent to the first judgment and introduced at the second hearing?

4. Did the district court err when it failed to find plaintiffs knew, prior to the initial hearing, of the evidence presented by defendants at the second hearing, thus failing to disclose to the court the existence of such records; that such failure was material, misled the court, was false and constituted a fraud upon the court, and that because of such failure, the court and defendants were put to much trouble and expense?

5. Did the district court err when it allowed certain costs to plaintiffs?

It is well settled in Montana that the findings and judgments of the district court will not be disturbed if supported and justified by the evidence. Fautsch v. Fautsch, 166 Mont. 98,

- 4 -

530 P.2d 1172, 32 St.Rep. 70; Richardson v. Howard Motors, Inc.,
163 Mont. 347, 516 P.2d 1153; Hornung v. Estate of Lagerquist,
155 Mont. 412, 473 P.2d 541; Anderson v. Mace, 99 Mont. 421, 45
P.2d 771; Anaconda National Bank v. Johnson, 75 Mont. 401, 244
P. 141. The evidence must be viewed in the light most favorable
to the prevailing party. Bos v. Dolajak, ___Mont.____, 534 P.2d
1258, 32 St.Rep. 438; Holenstein v. Andrews, 166 Mont. 60, 530
P.2d 476, 32 St.Rep. 41; Rogers v. Hilger Chevrolet Co., 155
Mont. 1, 465 P.2d 834; Strong v. Williams, 154 Mont. 65, 460
P.2d 90; Batchoff v. Craney, 119 Mont. 157, 172 P.2d 308.

Before examining the evidence presented at the trial, we
take cognizance of the statutory rules for construing land
descriptions. Defendants refer us to section 93-2201-4, R.C.M.
1947, which states, inter alia:

> "The following are the rules for construing the
> descriptive part of a conveyance of real property,
> when the construction is doubtful and there are
> no other sufficient circumstances to determine it:
>
> " * * *
>
> "2. When permanent and visible or ascertained
> boundaries or monuments are inconsistent with
> the measurement, either of lines, angles, or
> surfaces, the boundaries or monuments are para-
> mount."

In Buckley v. Laird, 158 Mont. 483, 491, 493 P.2d 1070,
this Court quoted this language from 12 Am Jur 2d, Boundaries,
§61, p. 599:

> "'In surveying a tract of land according to a
> former plat or survey, the surveyor's only duty
> is to relocate, upon the best evidence obtainable,
> the courses and lines at the same place where
> originally located by the first surveyor on the
> ground. In making the resurvey, he has the right
> to use the field notes of the original survey.
> The object of a resurvey is to furnish proof of
> the location of the lost lines or monuments, not
> to dispute the correctness of or to control the
> original survey.'"

This is what the surveyor in the instant case was asked to do
and which he did. He surveyed the old wagon road from Springdale

Station to Hunters Hot Springs, using the field notes and survey map of the 1886 United States Government Survey. He also certified no other road, whether or not designated as a wagon road, crossed Lot 5 at the time of the 1886 survey.

Defendants allege the surveyor ignored the clear, existing monuments, i.e. the present county road, when surveying for the wagon road designated in the 1899 and 1903 deeds. We disagree, the surveyor was asked to find the wagon road, and found the only wagon road so designated crossing Lot 5 from 1886 to the present day.

While it is true the 1886 wagon road crosses Lot 5 in a generally east-west direction and the portions of Lot 5 plaintiffs wish designated as east and west of the wagon road are not true east or west, other evidence presented at the two hearings tend to confirm the district court's judgment for plaintiffs.

The 1900 Park County assessment records for Lot 5 indicate 27.36 acres west of the wagon road and 29.00 acres east of the road. Contemporary Park County assessment records indicate plaintiffs own 24.50 acres in Lot 5, but the record shows only 3.4 acres of Lot 5 lies west of the present county road. Unless we assume the county records have been incorrect for at least 75 years, these records serve as evidence supporting the correctness of the district court's judgment; especially with testimony in the record that the acreage contained in the portions as claimed by plaintiffs would approximate the assessment records.

The use of the term "wagon road" in the deeds tends to support the selection of the wagon road described in the 1886 survey as the proper boundary between the parties' interests in Lot 5. Of course all roads were wagon roads in 1899 and 1903, but not all roads were so designated. The record indicates county

- 6 -

roads were so named in all plats, surveys, and road books offered into evidence. If the scrivener intended the road designated in the deeds to be the present county road, or a dedicated county road at roughly the present road's location, he would have said county road in the deeds.

Upon examining the record, we find that substantial evidence, when viewed in a light most favorable to the prevailing party, supports the findings, conclusions, and judgments of the district court.

We next consider the issue of acquiescense on the part of plaintiffs to the present county road serving as the boundary between the east and west portions of Lot 5.

What is "acquiescence"? A helpful definition is found in Pence v. Langdon, 99 U.S. 578, 25 L.Ed. 420, 421:

> "'Acquiescense and waiver are always questions of fact. There can be neither without knowledge. * * * One cannot waive or acquiesce in a wrong while ignorant that it has been committed. * * * There must be knowledge of facts which will enable the party to take effectual action. Nothing short of this will do. When fully advised, he must decide and act with reasonable dispatch.'"

This remains the law of acquiescence, as indicated in 12 Am Jur 2d Boundaries, §85:

> "With regard to the establishment of a common boundary line, acquiescence means a consent to the conditions and involves knowledge of them * * *."

See also: Houplin v. Stoen, 72 Wash.2d 131, 431 P.2d 998.

The rules laid down in Hoar v. Hennessy, 29 Mont. 253, 74 P. 452; Borgeson v. Tubb, 54 Mont. 557, 172 P. 326; Tillinger v. Frisbie, 132 Mont. 583, 318 P.2d 1079; are sufficient foundation for the use of the Pence definition in Montana.

In applying the Pence definition of "acquiescence" to the instant case, we find plaintiffs did not acquiesce to the present county road serving as the boundary between the east and west portions

- 7 -

of Lot 5. The records show plaintiffs and defendants accepted the present county road as the boundary between their lands for over 30 years but this was not acquiescence on the part of plaintiffs, as they were ignorant of the facts indicating the present county road is not the true boundary. When plaintiffs became "fully advised" of the facts, they acted "with reasonable dispatch" to establish the true boundaries.

Defendants allege the district court erred in not finding the present county road to be the true boundary, based on the additional evidence presented at the rehearing. The record indicates the evidence presented at the rehearing did not disprove the location of the 1886 wagon road as the true boundary. The evidence presented at the rehearing consisted of an 1890 road book and a viewer report of a "County Road from Springdale to Mendenhall". No evidence of the dedication of this road was introduced. In fact, the record shows, this road's location was not the exact location of the present county road. The Park County assessment record, discussed heretofore, also does not indicate the present county road as the true boundary.

The district court was correct in concluding the evidence introduced by defendants at the rehearing was not relevant nor material to the existence and location of the "wagon road", designated in the 1899 and 1903 deeds.

Defendants allege plaintiffs failed to disclose to the district court the existence of the 1890 records, thereby causing a fraud upon the court, as the failure was material and misled the court.

Plaintiffs admit to knowledge of the 1890 records prior to the original hearing. Plaintiffs testified the records were not brought to the attention of the court, because they did not believe the 1890 records relevant to the location of the "wagon

- 8 -

road". The district court found these records not relevant or material to the wagon road controversy, thus plaintiffs' failure to bring them to the court's attention could not be misleading or a fraud on the court.

Defendants allege the district court erred in allowing certain costs to plaintiffs. The costs challenged are: (1) the fees for publication of summons; (2) preparation of maps and surveys; and (3) copies of depositions purchased by plaintiffs for trial preparation.

Section 93-8618, R.C.M. 1947, provides:

"A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows: * * * the expenses of taking depositions; the legal fees for publication when publication is directed * * * the legal fees paid stenographers for per diem or for copies * * * the reasonable expenses for making a map or maps if required, and necessary to be used on trial or hearing * * *".

The publication fees are allowed by specific statutory provision, thus these costs were properly charged to defendants.

The cost of preparation of maps and surveys are allowed where necessary to explain the situation. Kelly v. City of Butte, 44 Mont. 115, 119 P. 171; Perkins v. Stephens, 131 Mont. 138, 308 P.2d 620. In the instant case, the maps assisted the court in determining the existence and location of the wagon road. Both parties stipulated to the introduction of the maps into evidence. The reasonable cost for preparation of the maps entered into evidence shall be allowed. The district court is directed to determine whether any part of the map and survey costs billed by plaintiffs arose from surveys or maps of plaintiffs' property outside Lot 5 or did not pertain to the location of the "wagon road". Any such unnecessary expense shall not be allowed as costs charged to defendants.

The copies of depositions purchased by plaintiffs for

- 9 -

trial preparation were solely for plaintiffs' benefit and cannot be charged to defendants. Davis v. Trobough, 139 Mont. 322, 363 P.2d 727.

The judgment of the district court is affirmed, with the exception of the determination of costs charged to defendants, which shall be determined by the district court in accordance with directions herein.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 10 -