No. 13749

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

AUDIT SERVICES, INC.,
a Montana corporation,

Plaintiff and Appellant,

-vs-

ELMO ROAD CORPORATION,
a corporation,

Defendant and Respondent.

---

Appeal from:  District Court of the Fourth Judicial District,

Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

George, Williams and Benn, Missoula, Montana
Richard Ranney argued, Missoula, Montana

For Respondent:

Poore, McKenzie, Roth, Robischon and Robinson,
 Butte, Montana
David Wing argued, Butte, Montana

For Amicus Curiae:

Hilley and Loring, Great Falls, Montana
Emilie Loring argued, Great Falls, Montana
McKittrick and Duffy, Great Falls, Montana
D. Patrick McKittrick argued, Great Falls, Montana

---

Submitted: January 31, 1978

Decided: FEB 22 1978

Filed: FEB 22 1978

Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court:

A collection agency, on the behalf of three union trust funds, sued a corporation for an accounting and judgment for all sums owing pursuant to certain collective bargaining agreements and declarations of trust. Following a nonjury trial, the District Court, Lake County, denied relief to the collection agency. The collection agency appeals.

Plaintiff Audit Services, Inc. is a collection agency for three union trust funds. The trust funds are: Laborer's A.G.C., Health and Welfare, Pension and Training; Operating Engineers Trust of Montana, Health and Welfare, Pension, Apprenticeship and Vacation; Teamster's Trust of Montana, Health and Welfare. Plaintiff is attempting to require defendant Elmo Road Corporation to satisfy its obligations under collective bargaining compliance agreements to make contributions to these trust funds.

During the spring 1972, representatives of the Operating Engineers, Teamsters and Laborers Unions contacted the Elmo Road Corporation and requested that it become a participant in the trusts involved. The union representatives talked to Roy Winslow, the general manager of the defendant corporation. Winslow duly executed collective bargaining compliance agreements with the union representatives. The compliance agreements provide that defendant agrees to be bound by the existing collective bargaining agreement in effect between the union and the employer's association, that defendant agrees to comply with the various articles of trust which have been set up by collective bargaining agreement, and that compliance will continue until such time as either party

notifies the other in writing at least sixty days before the expiration of the then existing collective bargaining agreement of its intention to withdraw. The declarations of trust, which the defendant agreed to comply with, set forth a schedule for contributions to the trust funds by the employers bound to the agreements.

When the compliance agreements were signed, defendant was working as a subcontractor on a Polson school job for Sletten Construction Company. Sletten Construction was a signatory to collective bargaining agreements with each of the three unions involved here. These agreements contained clauses requiring the signatory employer to require all of his subcontractors to comply with the conditions of the agreements.

From April 1972 to October 1972, the period of the Sletten Construction subcontract, defendant paid the required contributions to the trust funds. When defendant stopped contributing, the trusts sent delinquency notices. No payments were made by defendant. The trusts, therefore, assigned their causes of action to plaintiff. Prior to trial plaintiff had the records of defendant audited. This audit indicated an amount owing to the three trust funds of $31,842.53, which includes contributions, liquidated damages, interest and audit fees. In addition, under the terms of the trust documents, attorney fees are recoverable. Prior to trial, plaintiff incurred attorney fees in the amount of $1,802.02.

The case was tried in the District Court on September 29, 1976. Thereafter judgment was rendered for defendant. Findings of fact and conclusions of law were entered on December 7, 1976. The court found that Roy Winslow did not have authority to sign the compliance agreements on behalf of Elmo Road Corporation; that he

did not believe the compliance agreements would bind the corporation to a long term collective bargaining agreement; that the unions had not been certified as the exclusive bargaining representatives of defendant's employees; and, that the collective bargaining agreements, which the compliance agreements purported to bind defendant, were not such contracts which were usual, proper or necessary to be made in the ordinary transaction of defendant's business. From these findings, the court concluded that Roy Winslow had no actual, implied, or ostensible authority to bind defendant to the collective bargaining agreements; that because he had no authority to bind the defendant to the agreements, the defendant has no obligation to contribute to the trust funds; and, that because the unions were not certified by the National Labor Relations Board as the exclusive bargaining representative of defendant's employees and did not represent a majority of the employees, the compliance agreements are invalid and unenforceable. Plaintiff now appeals from this judgment.

Three issues are before this Court:

1) Whether the District Court erred in finding, concluding, and decreeing that the agreements entered into between the defendant and the unions were invalid because the employer's general manager had no authority to bind the defendant to the agreements?

2) Whether the defendant by making the contributions to the trust funds for a period of time in 1972, ratified the collective bargaining compliance agreements?

3) Whether the District Court erred in invalidating the agreements between the employer and the unions which required the employer to make contributions to the trust funds on behalf of its employees?

The general manager of a corporation can have either actual, implied, or ostensible authority to enter into contracts on behalf of the corporation. The general rule is stated in this language:

> "Unless his authority is specially restricted, a general or managing officer or agent may enter into any contract which is usual, proper or necessary to be made, in the ordinary transaction of the company's business, or which he is held out to the public as having authority to make, or which, although beyond his general powers, he is expressly authorized to make; and a third person who deals with such manager is not affected by secret limitations upon such authority. * * *" 19 C.J.S. Corporation, §1043(f).

This rule has been adopted in Montana. Electrical Products Consolidated v. El Campo, Inc., (1937), 105 Mont. 386, 73 P.2d 199.

In this case the trial court concluded Winslow, as the general manager of Elmo Road Corporation, had no actual, implied, or ostensible authority to sign the compliance agreements on behalf of the corporation. Plaintiff contends the evidence does not support this conclusion.

In reviewing the findings and judgment of the District Court, we will not disturb those findings if they are supported by substantial evidence. Johnson v. Jarrett, (1976), 169 Mont. 408, 548 P.2d 144; Fautsch v. Fautsch, (1975), 166 Mont. 98, 530 P.2d 1172. The evidence must be viewed in the light most favorable to the prevailing party. Johnson v. Jarrett, supra; Luppold v.Lewis, (1977), _____Mont._____, 563 P.2d 538, 34 St. Rep. 227.

Applying that standard to this case, the District Court's finding that Roy Winslow had no actual authority to bind the corporation to the compliance agreements is supported by substantial evidence. The evidence supporting this finding is that: (1) Roy Winslow's employment contract limited his authority to act

on behalf of the corporation; (2) the authority of the general manager is set forth in the by-laws and regulations of the corporation; and (3) the testimony of the president of the corporation, Al Hewankorn, as to the authority of the general manager.

The employment contract outlined the general manager's duties to be: (1) procurement of contracts, obtaining financing and necessary equipment; (2) overall supervision of field work, office work, and equipment maintenance; and (3) hiring, firing, disciplining and assigning jobs to all employees. The contract provided the defendant agreed to hire Winslow as its general manager in accordance with the authority and responsibilities outlined in its regulations and by-laws. The regulations and by-laws state generally that the manager will consult with the Board of Directors on all major questions of policy and be prepared to submit such questions to the shareholders for final decision. In his testimony Al Hewankorn stated that Winslow had no authority to bind the corporation to any collective bargaining agreement and the corporation considered any relationship with a labor union to be a major question of policy that would have to be decided by the shareholders and not the general manager.

A general manager can have implied authority to enter contracts on behalf of a corporation. Implied authority has been defined in this manner:

> "Implied authority is a form of actual authority derived by implication from the principal's words or deeds. It is sometimes said that implied authority is actual authority circumstantially proved. In general, an agent has implied authority to do those acts which are usual and incidental to the authorized

transaction and those which are reasonably
necessary to accomplish the principal's
purposes, including the making of whatever
contracts are needed." Sell, Agency, §40 (1975).

The rule in Montana on implied authority has been stated as

follows:

"No principle of law is more clearly settled than
that an agent to whom is intrusted by a corporation
the management of its local affairs, whether such
agent be designated as president, general manager,
or superintendent, may bind his principal by contracts
which are necessary, proper, or usual to be made in
the ordinary prosecution of its business. * * * The
fact that he occupies, by the consent of the board
of directors, the position of such an agent, implies,
without further proof, the authority to do anything
which the corporation itself may do, so long as the
act done pertains to the ordinary business of the
company." Trent v. Sherlock, (1900), 24 Mont. 255,
263, 61 P. 650.

In this case, the District Court found that Roy Winslow

did not have implied authority to sign the compliance agreements

on behalf of Elmo Road Corporation. Specifically, the court

found in its finding of fact XVI:

"The collective bargaining agreements, to which the
various compliance or participating agreements executed
by Roy Winslow purport to bind the Elmo Road Corpora-
tion, were not such contracts which were usual, proper
or necessary to be made in the ordinary transaction
of the Elmo Road Company's business."

Plaintiff contends the evidence does not support this finding.

We agree.

The evidence indicates Roy Winslow signed the compliance

agreements to obtain the Polson school job subcontract from

Sletten Construction. He testified that if he had not signed

the agreements, Elmo Road Corporation would not have obtained

the contract. At the trial of this case, in its brief, and

in oral argument, defendant admits Winslow signed the agreements

so the corporation could obtain the subcontract. However,

- 7 -

defendant contends the signing of the agreements was not usual, proper or necessary for Winslow to do in the ordinary transaction of defendant's business.

We believe Winslow did have implied authority to sign the compliance agreements and the finding of the District Court on this issue cannot be upheld. The court found that one of Winslow's responsibilities was to procure work for the corporation. This finding is supported by the evidence. In order to procure work on the Polson school job, the evidence shows that he had to sign the compliance agreements. Thus, his signing of those agreements was proper, usual and necessary in the transaction of defendant's business. Winslow had the implied authority to sign the agreements.

Plaintiff also contends Winslow had ostensible authority to sign the agreements. As stated earlier, ostensible authority is another form of authority a general manager can have to act on behalf of a corporation. Ostensible authority is defined in section 2-124, R.C.M. 1947:

> "Ostensible authority is such as a principal,
> intentionally or by want of ordinary care, causes
> or allows a third person to believe the agent to
> possess."

The District Court concluded Roy Winslow did not have ostensible authority to sign the compliance agreements. Plaintiff argues the evidence does not support this conclusion.

Plaintiff's argument is that the evidence showed Winslow was, as general manager of the corporation, the official representative of defendant's company; that the restrictions on his authority were in regulations and by-laws, which were not recorded or filed

- 8 -

nor available to be viewed by the union representatives; that Al Hewankorn, president of Elmo Road Corporation, was on the job site when the union representatives came to get the agreements signed and he made no effort to tell the union agents they should talk to him and not Roy Winslow; that both Winslow and Hewankorn testified they knew of no facts that would have put the union representatives on notice of the restrictions in Winslow's authority; and that general managers usually sign such agreements on behalf of their companies.

On the other hand, defendant argues the evidence shows that Winslow did not have ostensible authority. It again argues the agreements were signed to obtain the subcontract and this is not evidence of ostensible authority. Further, it argues that Al Hewankorn testified the by-laws and regulations of the corporation were free to be examined by the union representatives if they chose to examine them; and Winslow testified he did not consider himself the official representative of the corporation for all purposes.

This Court has previously held that ostensible authority arises from the facts of the particular case and the test is found in a determination of the exact extent to which the principal held the agent out or permitted him to hold himself out as authorized, and what a prudent person acting in good faith under the circumstances would reasonably believe the agent's authority to be. Butler Mfg. Co. v. J & L Imp. Co., (1975), 167 Mont. 519, 540 P.2d 962. Applying that standard here, we find Roy Winslow had ostensible authority to sign the compliance agreements and bind the defendant to them. He was held out to be the general manager of the corporation and the union representatives,

unaware of any restrictions in his authority, could reasonably believe Winslow had the authority to sign the agreements.

In concluding as a matter of law that Roy Winslow did not have ostensible authority, the District Court made no finding of fact that he lacked such authority. The defendant, in its brief and at oral argument, states the finding which says the compliance agreements were "not such contracts which were usual, proper or necessary to be made in the ordinary transaction of Elmo Road Company's business", is a finding of a lack of ostensible authority in Winslow to execute the agreements. As pointed out earlier, this finding deals with implied authority and not ostensible authority. Implied authority and ostensible authority are not one and the same.

We believe the District Court misapplied the law in concluding, as a matter of law, that Winslow did not have ostensible authority to sign the compliance agreements. Ostensible authority can be implied from the words and conduct of the parties and circumstances of the particular case notwithstanding a denial by the alleged principal. Ludwig v. Montana Bank and Trust Co., (1939), 109 Mont. 477, 98 P.2d 379. Applying that rule to this case, we find defendant, by making Roy Winslow its general manager and authorizing him to procure work for defendant, implied to third parties that he had the ostensible authority to sign agreements such as those in question here.

In discussing the effect of limitations on an agent's authority on third parties, the Restatement on Agency 2d, §167, states:

"If a person dealing with an agent has notice that the agent's authority is created or described in a writing, which is intended for his inspection, he is affected by limitations upon the authority contained in the writing, unless misled by conduct of the principal."

Comment b. to §167 states:

"* * * Ordinarily, by-laws of a corporation or the records of the employer's business are not intended for the inspection of third persons within the the meaning of this Section."

Thus, under this rule, the limitations on the general manager's authority contained in the regulations and by-laws can have no effect as notice to third persons dealing with the manager, regardless of their being open for inspection or not. The limitations in those documents cannot limit the general manager's ostensible authority.

Therefore, we hold Roy Winslow had both implied and ostensible authority as general manager of Elmo Road Corporation to act on behalf of the corporation and the District Court's conclusions to the contrary are in error.

In its second issue plaintiff raised the issue of ratification at trial and on appeal. Defendant at trial and on appeal argues that the doctrine of ratification has no application to this case. The District Court made no findings of fact or conclusions of law on the issue of ratification. Nor did the court make a finding of fact or conclusion of law on why Elmo Road Corporation made the contributions to the trust funds in 1972, or what effect those contributions had regarding the rights and obligations of the parties to this action.

The proper resolution of the issue of ratification is the rule set forth in Freeman v. Withers, (1937), 104 Mont. 166, 65 P.2d 601. There, this Court stated that where the principal, with knowledge of all the material facts, voluntarily makes partial

payment on an unauthorized contract, there is strong evidence of ratification. Applying that rule here, we find that Elmo Road's voluntary contributions to the trust funds during the months of April through October, 1972, ratified Winslow's act of signing the agreements requiring the contributions.

The third issue, whether the District Court erred in invalidating the compliance agreement, is a dispute involving a collective bargaining agreement. Plaintiff claims the compliance agreements are valid. Defendant claims they are illegal and invalid. To resolve this disagreement, § 301 of the Taft-Hartley Act, 29 U.S.C. § 185(a) must be invoked. That section reads:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

This section has been construed to mean that there is concurrent jurisdiction in the state courts to hear such disputes, but, in exercising this jurisdiction, state courts must apply federal labor law. Dowd Box Co. v. Courtney, (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L ed 2d 483. Montana has recognized this principle. Lowe v. O'Connor, (1973), 163 Mont. 100, 515 P.2d 677.

In its findings of fact and conclusions of law, the District Court held that the compliance agreements were invalid and unenforceable by the union trust funds. Specifically, the court found the unions were not certified by the National Labor Relations Board as the exclusive bargaining representative of defendant's employees; that the unions never represented a majority of the employees of any bargaining unit of defendant's employees; and that the unions had no authority to represent the employees. These findings and

conclusions were based on the National Labor Relations Act, 29 U.S.C. §158(a)/(b), which deals with unfair labor practices.
  and

The United States Supreme Court, in construing 29 U.S.C. §158(a)/(b), has held that the determination of an unfair labor
  and
practice is exclusively a function of the federal system. San Diego Building Trades Council v. Garmon, (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L ed 2d 775. Thus, although a state court has the authority to construe and enforce collective bargaining agreements, it does not have the authority to invalidate a labor contract, proper on its face, because one of the parties has allegedly engaged in an unfair labor practice. In this case, we hold the District Court erred in invalidating the compliance agreements which were proper on their face because the state courts lack the authority to do so.

A case in point on this issue is Trust Fund Services v. Heyman, (1977), 88 Wash.2d 698, 565 P.2d 805. In that case, a collection agency was attempting to collect contributions from an employer who was obligated to contribute to union trust funds and had failed to do so. The employer's defense was an allegation of unfair labor practices on the part of the union. He further argued the issue of unfair labor practice was res judicata because the 9th Circuit and the Federal District Court had rescinded the contract between the employer and the union, when the employer sued the union in federal court for recission of the contract on a claim of unfair labor practice. The Washington Supreme Court held the claim of unfair labor practice was no defense to the action by the collection agency for the unions. Further the Washington Court held that it was not bound by the decision of the federal courts. Citing San Diego Building Trades v. Garmon, supra, the Washington Court stated the National Labor Relations Board has

exclusive jurisdiction to determine unfair labor practices and state courts as well as federal courts must defer to the exclusive competence of the N.L.R.B. Thus, in this case, the defendant can only raise the question of unfair labor practices on the part of the unions before the N.L.R.B. This Court cannot decide that issue.

Therefore, the judgment of the District Court is vacated. The cause is remanded to the District Court for entry of judgment in accord with this opinion, and for determination of reasonable attorney fees to be awarded to plaintiff for the services of its attorneys at trial in the District Court. That award shall be added to our award of $1,250 attorney fees for the services of its attorneys on appeal and both sums shall be incorporated into the judgment.

_____
Justice

We Concur:

_____
Acting Chief Justice

_____

_____
Justices.