No. 14866

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

YELLOWSTONE PINE CO.,

                       Plaintiff and Appellant,

      vs.

BIG SKY OF MONTANA, a Corporation and
BIG SKY OF MONTANA REALTY, a Corporation,

                    Defendants and Respondents.

---

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

    McKinley Anderson argued, Bozeman, Montana

    For Respondents:

        Brown, Pepper and Kommers, Bozeman, Montana
        William L. Pepper argued, Bozeman, Montana
        Boone, Karlberg & Haddon, Missoula, Montana
        Sam Haddon argued, Missoula, Montana

---

                  Submitted:  December 14, 1979

                    Decided: *January 10, 1980*

Filed: JAN 10 1980

*Thomas J. Kearney*
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Yellowstone Pine Company (herein Yellowstone) filed a complaint in the District Court of Gallatin County. The complaint alleged breach of a contract between Yellowstone and respondent Big Sky of Montana, Inc. (herein Big Sky). The Honorable W. W. Lessley heard the case on March 23, 1979. The District Court found no breach of contract and entered findings accordingly. This appeal followed.

Appellant Yellowstone and respondent Big Sky entered into a contract in March 1970. Yellowstone is a lumber company operating a mill at Belgrade, Montana. Big Sky is the original developer of the Big Sky Ski Resort near Bozeman, Montana. The contract obligated Big Sky to deliver a minimum of one million board feet of timber per year to Yellowstone for a period of eight years. The contract required Yellowstone to pay Big Sky a set price for the lumber as it was delivered.

In addition, the contract gave Yellowstone the right of first refusal to purchase any timber suitable for lumber manufacturing from certain lands then owned by Big Sky and referred to as the Corcoran lands. The contract required Big Sky to notify Yellowstone in writing of its intention to sell any timber suitable for lumber manufacturing from the Corcoran lands. Yellowstone then had 15 days to match any offer for purchase of timber Big Sky had received. If Yellowstone did so, Big Sky agreed to sell the timber to Yellowstone. If Yellowstone did not match the offer, Big Sky could sell the timber to a third party. The right of first refusal granted to Yellowstone under the contract ran for 15 years from March 3, 1970. The parties had the con-

tract recorded shortly after its execution.

In May 1976, Big Sky created a wholly owned subsidiary named Big Sky of Montana Realty, Inc. (herein Realty). Realty is the second respondent in this case. In June 1976 Big Sky, in the process of getting out of the ski resort business, conveyed the Corcoran lands to Realty. Realty agreed to indemnify Big Sky for any claim arising out of the 1970 contract with Yellowstone.

Also in June 1976, Boyne Mountain Lodge, Inc., a company controlled by Everett D. Kircher, acquired all the stock of Big Sky. In November 1977, Realty conveyed the Corcoran property to Lone Peak, Inc., a wholly owned subsidiary of Big Sky. Although the Corcoran lands were transferred back to a wholly owned subsidiary of Big Sky, Kircher, not the original developers of Big Sky, now controlled Big Sky.

Big Sky furnished Yellowstone with no notice of any of the conveyances of the Corcoran lands. All the corporations involved in the purchase of the lands did, however, have notice of the contract between Big Sky and Yellowstone concerning the sale of timber from the lands. Further, all successors in interest to Big Sky have performed under the terms of the contract. From June 1976 to August 1978, Realty and Lone Peak delivered timber to Yellowstone to fulfill the contract requirement of delivering one million board feet of lumber to Yellowstone each year through 1978. In the fall of 1978, Boyne received an offer to purchase some timber from the Corcoran lands. Pursuant to the 1970 contract, Boyne offered to Yellowstone the right of first refusal to purchase the logs. Yellowstone exercised its right and purchased the logs in October 1978.

Yellowstone raises the following issues on appeal:

1. Are the findings of fact and conclusions of law entered by the District Court so inconsistent as to require reversal?

2. Can land subject to a right of first refusal contract which grants to a party the first right to purchase timber suitable for lumber manufacturing be conveyed to someone other than the party entitled to the right of first refusal with no notice to the party with the right of first refusal without committing a breach of contract?

Under its first allegation of error, Yellowstone points out various differences in the terminology used by the District Court in the findings of fact and conclusions of law entered in this case. For example, Yellowstone states that Finding No. 1 refers to "timber suitable for lumber manufacturing" while Conclusion No. 1 uses the language "lumber suitable for timber manufacture." Yellowstone argues inconsistencies like this in the judgment require reversal.

Yellowstone also contends the conclusions of law entered by the District Court contain internal inconsistencies. To support this theory, Yellowstone points out that Conclusion No. IV concludes there has been no breach of the 1970 contract. Yellowstone then states Conclusions Nos. V and VI indicate it is estopped from claiming breach of the contract and has waived any claim for breach of contract because Yellowstone accepted substantial benefits under the contract after breach by respondents. Yellowstone argues these conclusions are inconsistent, holding no breach on the one hand and breach but waiver and estoppel on the other. Yellowstone contends this inconsistency requires reversal.

-4-

Yellowstone's arguments challenging the findings and conclusions entered by the District Court lack merit. Findings and conclusions of the District Court will not be disturbed if supported by the evidence. Johnson v. Jarrett (1976), 169 Mont. 408, 412, 548 P.2d 144, 147. In determining if the evidence supports the judgment, the evidence must be viewed in the light most favorable to the prevailing party. Johnson, 169 Mont. at 412. Applying that rule to this case, the hypertechnical allegations of error made by Yellowstone do not warrant reversal. Although the findings and conclusions refer to the timber which is the center of the controversy here in several different fashions, the record justifies the use of different terminology.

At trial the parties at various points referred to the timber involved here as "green merchantable logs," "merchantable timber," "timber suitable for lumber manufacture," and "logs." These references in the record provide sufficient evidence to support the use of the terms by the District Court in the findings and conclusions. This is especially true when it is considered that all the above references come from facts stipulated to by the parties.

Big Sky and Realty correctly point out that the conclusions entered by the District Court do not contain internal inconsistencies. Conclusion IV states respondents did not breach their contract with Yellowstone. Conclusions V and VI state Yellowstone is estopped and has waived its right to claim or allege breach of contract. Conclusions V and VI do not say the contract has been breached. They merely hold that even if a breach of contract had occurred, Yellowstone had no cause of action because it accepted benefits under the contract after the alleged breach. This statement is

consistent with a statement that the contract had not been breached at all. Since no inconsistency exists, the judgment cannot be reversed on this basis.

Big Sky and Realty should also prevail on the second issue raised by this appeal. The question presented by the second issue hinges on a determination of whether the 1970 contract granted Yellowstone an interest in the Corcoran land itself or whether the contract only gave Yellowstone the right to purchase a product Big Sky might produce on the land. If Yellowstone obtained a property right under the contract, selling the Corcoran lands without notice to Yellowstone breached the right of first refusal clause of the contract. If, however, Yellowstone only received the right to purchase a product produced on the Corcoran lands, the 1970 contract cannot be considered breached unless the product is sold without giving Yellowstone the opportunity to purchase the product.

The problem in determining if the 1970 contract granted Yellowstone an interest in the Corcoran lands arises out of the use of the term "timber suitable for lumber manufacturing" in the contract. When a contract grants a right to timber growing on lands, the contract normally conveys an interest in the land. Hart v. Anaconda Copper Mining Co. (1924), 69 Mont. 354, 360, 222 P. 419, 421; R. M. Cobban Realty Co. v. Donlan (1915), 51 Mont. 58, 65-71, 149 P. 484, 486-488. However, when timber is severed from the land, it becomes personal property. Sorensen v. Jacobson (1951), 125 Mont. 148, 152, 232 P.2d 332, 335. From these two rules of law, it follows that if a contract conveys an interest in growing trees still attached to the land, the contract grants an interest in real property. If the contract grants

an interest in the timber after severance from the land, it only conveys an interest in personalty.

To determine when Yellowstone acquired an interest in the timber from the Corcoran lands, the terms of the contract as an entirety must be considered. R. M. Cobban, 51 Mont. at 65. Viewing the contract in this fashion, Yellowstone acquired no right to the timber until severed from the Corcoran lands. Under the contract, Yellowstone had a right of first refusal to purchase the timber if and when Big Sky decided to sell timber in addition to the million board feet per year it was required to deliver. Nothing in the contract allowed Yellowstone to compel Big Sky to log timber in addition to the yearly requirement. Thus, Yellowstone acquired no interest in the timber until Big Sky decided to log the timber and put it up for sale. Then, after Big Sky had severed the timber from the land, the contract gives Yellowstone an interest in the timber. As pointed out above, an interest in the timber after it is severed from the land is not an interest in realty. It only represents an interest in personal property.

Under this analysis, Yellowstone only had an interest in a product from the land, not the land itself. Therefore, Big Sky and Realty did not breach the contract by conveying the land without notice to Yellowstone since Yellowstone had no interest in the land. The contract would only be breached if timber from the land were sold without first offering the timber to Yellowstone. There is no evidence this has occurred. On the contrary, it appears all Big Sky's successors in interest have honored the right of first refusal provision of the 1970 contract. As long as they continue to do so, Yellowstone has no cause for breach of contract against Big Sky or Realty.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____