**NEW MEXICO DISTRICT COUNCIL OF CARPENTERS, AFL–CIO,
Plaintiff-Appellant,**

**v.**

**The MAYHEW COMPANY, a New Mexico Corporation, Defendant-Appellee.**

**Nos. 79–1638, 79–1639.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 26, 1981.

Decided June 24, 1981.

Rehearing Denied in No. 79–1638
Aug. 7, 1981.

Gerald R. Bloomfield of Kool, Kool, Bloomfield & Eaves, P. A., Albuquerque, N. M., for plaintiff-appellant.

Nicholas J. Noeding, Albuquerque, N. M. (Barbara L. Shapiro, Albuquerque, N. M., with him on the briefs), of Poole, Tinnin & Martin, Albuquerque, N. M., for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

In 1968, defendant-employer signed a collective bargaining agreement recognizing plaintiff-union "as the sole and exclusive bargaining representative for the workmen employed to perform and performing ... construction work" and requiring defendant to pay specified wages and to contribute to plaintiff's fringe benefit funds on behalf of those employees. Defendant apparently signed the agreement in order to contribute to plaintiff's fringe benefit funds on behalf of one employee who did some carpentry work.[1] Defendant made contributions on behalf of this employee until the employee retired in 1969. Although it appears that some of defendant's employees hired after the above-mentioned employee's retirement performed carpentry work within the coverage of the collective bargaining agreement, defendant made contributions on behalf of

---

1. It is necessary to have a written agreement in order for an employer to make such contributions.   29 U.S.C. § 186(c)(5)(B).

and paid union wages to only one of those employees.[2]

In 1977[3] plaintiff notified defendant that it felt their agreement had been breached. Defendant replied by letter that it was not bound by any agreement. Plaintiff commenced this action pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), alleging breach of contract and seeking damages (including back wages and fringe benefits allegedly due six of defendant's past employees) and an injunction directing defendant to comply with the contract.

The district court found that a valid and enforceable collective bargaining agreement existed between the parties but limited damages to fringe benefits and union dues payable on behalf of one employee ($1,972.28). Both parties have appealed.

Defendant seeks to avoid any obligation under the agreement by alleging that plaintiff did not represent a majority of employees when the agreement was signed in 1968. Consequently, the argument runs, the execution of the agreement constituted an unfair labor practice under *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), and the agreement is therefore unenforceable.

It is true that the Court in *Garment Workers* found, as had the NLRB, that it was an unfair labor practice for both an employer and a union to enter into an agreement under which the employer recognized the union as exclusive bargaining representative of certain of his employees, although in fact only a minority of those employees had authorized the union to represent their interests.

*Id.* at 732, 81 S.Ct. at 1604. Additionally, the Court stated that, "On the facts shown, the agreement must fail in its entirety." *Id.* at 737, 81 S.Ct. at 1607. However, *Gar-*

*ment Workers* and the instant case differ in one important respect: the *Garment Workers* Court had before it an NLRB finding that the union in fact did not represent a majority of the employer's employees. *Id.* at 734 n.4, 81 S.Ct. at 1605 n.4. We do not have such an NLRB finding before us. This suit was brought in federal district court pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to enforce the agreement. Neither plaintiff nor defendant chose to complain to the NLRB of any possible unfair labor practices that may have been committed.

The distinction between an NLRB proceeding concerning an unfair labor practice and a § 301 action on an agreement proves fatal to defendant's defense based on plaintiff's alleged minority status. The defense is grounded on an unfair labor practice, and exclusive jurisdiction to find, prevent, and rectify unfair labor practices rests with the National Labor Relations Board. *See Longshoremen's Local 1416 v. Ariadne Shipping Co.*, 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218 (1970); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Furr's, Inc. v. NLRB*, 381 F.2d 562 (10th Cir.), *cert. denied*, 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105 (1967). An unfair labor practice, in this case only a possibility, does not constitute a ground on which a court hearing a § 301 action can find an agreement unenforceable. Defendant's precise argument has proved similarly unpersuasive before other courts. *See Pennington v. United Mine Workers of America*, 325 F.2d 804, 819 (6th Cir. 1963), *rev'd on other grounds*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626, *cert. denied*, 381 U.S. 949, 85 S.Ct. 1796, 14 L.Ed.2d 723 (1965); *Audit Services, Inc. v. Elmo Road Corp.*, 175 Mont. 533, 575 P.2d 77, 82–83 (1978); *Corvallis*

---

**2.** In 1977, defendant hired and paid fringe benefits for an employee who was a member of plaintiff union. Apparently, this employee was employed for a very short term.

**3.** The 1968 agreement contained a provision binding defendant to succeeding agreements

negotiated between the union and the New Mexico Building Branch of the Associated General Contractors of America, an employer organization, unless defendant gave timely notice of termination. No such notice was given until December 9, 1977.

*Sand & Gravel Co. v. Hoisting and Portable Engineers Local 701,* 247 Or. 158, 419 P.2d 38 (1966) (en banc), *cert. denied,* 387 U.S. 904, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967); *Building Service Employees Local 252 v. Schlesinger,* 440 Pa. 448, 269 A.2d 894 (1970); *Trust Fund Services v. Heyman,* 88 Wash.2d 698, 565 P.2d 805 (en banc), *cert. denied,* 434 U.S. 987, 98 S.Ct. 618, 54 L.Ed.2d 483 (1977); *but see NLRB v. Heyman,* 541 F.2d 796 (9th Cir. 1976) (preemption issue not discussed).

■ Defendant presents several contingent arguments that would relieve it of liability under the agreement. First, defendant asserts as clearly erroneous the district court's finding that defendant had not complied with the agreement's requirement concerning notification of intent not to be bound. Defendant apparently concedes that it gave no written notice of intent not to be bound by the agreements negotiated in 1973 and 1975. We do find, however, a letter dated December 9, 1977, wherein defendant explicitly informed plaintiff that "this letter is your formal notification that [defendant] will not be bound by the terms of any agreement negotiated by" plaintiff. Record, vol. 5, Defendant's Exhibit B. This letter was received by plaintiff on December 12, 1977. The 1975 agreement was to expire on April 1, 1978, and provided:

> Unless the Contractor gives the Union written notice at least seventy-five (75) days prior to the expiration or termination of this Agreement, stating specifically to the contrary, the Contractor agrees to be bound by the terms of the succeeding Agreement . . . .

*Id.* Plaintiff's Exhibit 3. We find that defendant's letter constituted the requisite written notice. Defendant was therefore not bound by the agreement negotiated in 1978. Any finding of the district court to the contrary is clearly erroneous. However, our decision on this issue does not require reversal or remand. The district court only awarded damages for hours worked by one employee who performed carpentry work

for defendant[4] from September to December, 1977, and was thus covered by the agreement negotiated in 1975.

■ Defendant also urges that by its conduct it substantially complied with the notification of intent not to be bound by provisions of all the agreements. Defendant's evidence on this point does not establish the asserted defense. The district court's finding that defendant had not substantially complied with these provisions is not clearly erroneous.

Defendant asserts that its intent to be bound by the acts of the employer association was not unequivocal and that this vitiates its liability under contracts negotiated by that association. This point was not raised before the district court and cannot be considered here.

■ Defendant finally raises defenses based on the applicable statute of limitations and laches. Defendant's evidence concerning these defenses is unpersuasive, and we cannot say that the district court's rejection of them was clearly erroneous.

■ Plaintiff also raises several objections to the district court's findings. It urges that more than one of defendant's employees performed carpentry work covered by the agreement and that these employees worked for longer periods of time than was found by the district court. There is conflicting evidence concerning these points, but we cannot say that the district court's conclusions concerning them were clearly erroneous.

■ Plaintiff finally objects to the trial court's conclusion that plaintiff could not collect the wages due the covered employee under the agreement. The district court held that "the damages to be paid by the defendant to the plaintiff are only those amounts which pursuant to the collective bargaining agreement are paid directly by an employer to the plaintiff." Record, vol. 1, at 59. We cannot agree with this statement of the law. "There is no merit to the contention that a union may not sue to

---

**4.** Defendant argues that the district court's finding that this employee performed carpentry work covered by the agreement is clearly erro- neous. The record supports the trial court's finding.

recover *wages* or vacation pay claimed by its members pursuant to the terms of a collective bargaining contract." *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 699, 86 S.Ct. 1107, 1110, 16 L.Ed.2d 192 (1966) (emphasis added).

An additional facet of this dispute has been addressed in varying degrees by the parties and by the trial court. Although it is not entirely clear, the district court apparently treated defendant as an employer not "engaged primarily in the building and construction industry," leaving this collective bargaining agreement outside the purview of § 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f). The district court made no finding on this issue.[5] However, even if we treat defendant as "engaged primarily in the building and construction industry," and this agreement thus covered by § 8(f), the enforceability of this agreement under § 301(a) is not affected.

Section 8(f) permits an employer engaged primarily in the building and construction industry to enter into a "prehire" agreement with a union before the union's majority status has been established. Before § 8(f) was enacted, such agreements constituted unfair labor practices. The Supreme Court held in *NLRB v. Local 103, International Association of Bridge, Structural & Ornamental Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978) (*Higdon*), that a union commits an unfair labor practice under § 8(b)(7)(C) of the National Labor Relations Act when it does not represent a majority of employees and pickets to enforce a prehire agreement with an employer.

■ Defendant reads *Higdon* to mean that § 8(f) agreements cannot be enforced at all and can be retroactively and unilaterally ignored by the employer until the union achieves majority status in the relevant bargaining unit. This position is not without support. *See Vermeer v. Aloha Contractors, Inc.*, No. 77–476 (D.Or., filed Aug. 14, 1980); *Washington Area Carpenters'*

*Welfare Fund v. Overhead Door Co.*, 488 F.Supp. 816 (D.D.C.1980). However, we agree with the court in *Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan v. Associated Wrecking Co.*, 638 F.2d 1128 (8th Cir. 1981), when it observed, in a case analogous to this one, "that the Supreme Court's decision [in *Higdon*] does not control the outcome of this case. ... [T]he Court did not purport to decide the enforceability of all section 8(f) agreements but only those which implicated the provisions of section 8(b)(7)(C)." *Id.* at 1132–33. *Accord, Western Washington Laborers-Employers Health and Security Trust Fund v. Newman*, No. C79–858V (W.D.Wash., filed Aug. 19, 1980); *Eastern District Council v. Blake Construction Co.*, 457 F.Supp. 825 (E.D.Va.1978); *Western Washington Cement Masons Health & Security Trust Funds v. Hillis Homes, Inc.*, 26 Wash.App. 224, 612 P.2d 436 (1980).

> [T]o characterize the holding of [*Higdon*] from an employer's perspective, a company does not commit an *unfair labor practice* for breach of its duty to bargain by unilaterally abrogating a prehire agreement with a labor union if that union never obtained majority support from the employees in the bargaining unit. It does not necessarily follow, however, that the absence of majority status leaves the union without a remedy for *breach of contract* on any provision of the section 8(f) agreement. To say that an employer may challenge the majority status of a union in an unfair labor practice proceeding is not to say that the employer may assert the union's lack of majority status as a defense in a breach of contract action on a type of contract specifically authorized by the [National Labor Relations] Act.

*Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan v. Associated Wrecking Co.*, 638 F.2d 1128, 1133 (8th Cir. 1981). In the present litigation, as in the litigation in *Associated Wrecking*,

> the spector of an unfair labor practice does not loom as a countervailing consid-

5. The district court did find that the leading case concerning § 8(f) agreements, *NLRB v. Local 103, International Ass'n of Bridge, Struc-* *tural & Ornamental Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978), was not applicable.

eration to the enforcement of the parties' section 8(f) agreement. [Plaintiffs] seek to enforce an agreement voluntarily undertaken by an employer for the payment of fringe benefits into trust funds. Those payments inure to the benefit of the individual employees at the time of employment, regardless of the majority status of the union. This situation contrasts markedly with that in [*Higdon*] where the union sought to enforce an 8(f) agreement for its benefits in an effort to obtain majority status.

*Id.* at 1133–34. We agree with the *Associated Wrecking* court that the employer who subjects himself to a § 8(f) agreement reaps the benefits of industrial peace at his worksite and should not complain when he is asked to honor the agreement that made such benefits possible.

The case is remanded to the district court for a determination of the wages due the one employee it found covered by the agreement. These wages are collectible by plaintiff. Otherwise, except insofar as it bound defendant to the 1978 contract, the decision of the district court is affirmed.