**TRUSTEES OF the COLORADO CARPENTERS AND MILLWRIGHTS HEALTH BENEFIT TRUST FUND, Trustees of the Colorado Centennial State Carpenters Pension Trust Fund, Trustees of the Colorado Carpenters Vacation Trust Fund, and Trustees of the Colorado Carpenters Statewide Joint Apprenticeship Trust Fund, Plaintiffs-Appellants,**

v.

**CONNER CONSTRUCTION COMPANY, a Colorado corporation, Defendant-Appellee.**

No. 81CA0463.

Colorado Court of Appeals, Div. II.

April 15, 1982.

Rehearing Denied May 13, 1982.

Certiorari Denied Sept. 20, 1982.

Gorsuch, Kirgis, Campbell, Walker & Grover, Dan S. Cross, Denver, for plaintiffs-appellants.

Good & Stettner, P. C., Martin Semple, Denver, for defendant-appellee.

KELLY, Judge.

Plaintiffs, trustees of certain carpenters' union trust funds (Trustees), seek to collect contributions allegedly owed to the trust funds by defendant, Conner Construction Company (Conner), pursuant to a pre-hire agreement authorized by § 8(f) of the National Labor Relations Act. 29 U.S.C.A. § 158(f). The trial court granted defendant's motion for summary judgment, holding that the pre-hire agreement was unenforceable absent a union majority. We reverse.

The parties have stipulated that Conner entered into a pre-hire agreement with the Carpenters District Council of Denver and Vicinity in 1978. The agreement required Conner to pay specified wages to its carpenter employees and make contributions to the carpenters' trust funds on behalf of those employees for each hour worked. The Trustees allege that Conner has failed to make adequate reports and payments to the trust funds for the period of July 6, 1978, to present. It is uncontroverted that the union did not represent a majority of Conner employees during the period of the agreement, and on this basis, Conner asserts that the agreement was unenforceable.

Before the enactment of § 8(f), the execution of a pre-hire agreement by an employer and a union constituted an unfair labor practice by both. *NLRB v. Local 103, International Ass'n of Bridge, Structural, & Ornamental Ironworkers,* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978) (*Higdon*). Section 8(f) creates an exception for the construction industry, providing that:

> "It shall not be an unfair labor practice ... for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members ... because (1) the majority status of such labor organization has not been established ... prior to the making of such agreement ...." 29 U.S.C.A. § 158(f).

Pre-hire agreements were authorized in the construction industry so that construction bidders could know in advance what their labor costs would be and could have access to a pool of skilled workers for quick reference. *NLRB v. Irvin,* 475 F.2d 1265 (3d Cir. 1973). Pre-hire agreements provide construction trade employees some of the wage and benefit advantages of union representation, while the employer receives some protection against labor unrest during the period of the contract. *Todd v. Jim McNeff, Inc.,* 667 F.2d 800 (9th Cir. 1982).

Conner relies on *Higdon, supra,* for its contention that this pre-hire agreement is unenforceable. In *Higdon,* the Supreme Court held that a union which does not represent a majority of employees commits an unfair labor practice under § 8(b)(7)(C) of the National Labor Relations Act when it uses recognitional picketing to enforce a pre-hire agreement against an employer:

"[A] pre-hire agreement does not entitle a minority union to be treated as the majority representative of the employees until and unless it attains majority support in the relevant unit. Until that time the pre-hire agreement is *voidable* and does not have the same stature as a collective-bargaining contract entered into with a union actually representing a majority of the employees and recognized as such by the employer." 434 U.S. at 341, 98 S.Ct. at 655, 54 L.Ed.2d at 593. (emphasis added)

The issue of the applicability of *Higdon* to the enforcement of pre-hire agreements in the context of contributions to union trust funds has divided the federal courts. In *Todd, supra,* the Ninth Circuit classified the cases into categories demarcated by their interpretation of *Higdon.*

The most restrictive reading of *Higdon* is that it applies only to unfair labor practice cases, and that § 8(f) agreements are fully enforceable in breach of contract cases. This position was adopted in *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Associated Wrecking Co.,* 638 F.2d 1128 (8th Cir. 1981), in which the Eighth Circuit reasoned that the *Higdon* court "did not purport to decide the enforceability of all Section 8(f) agreements but only those which implicated the provisions of Section 8(b)(7)(C)." According to the Eighth Circuit, the absence of majority status does not leave the union without a remedy for breach of contract. In a breach of contract action,

"the [specter] of an unfair labor practice does not loom as a countervailing consideration to the enforcement of the parties' section 8(f) agreement. Appellants seek to enforce an agreement voluntarily undertaken by an employer for the payment of fringe benefits into trust funds.

Those payments inure to the benefit of the individual employees at the time of employment, regardless of the majority status of the union. This situation contrasts markedly with that in [*Higdon,*] where the union sought to enforce an 8(f) agreement for its benefit in an effort to obtain majority status [through recognitional picketing]." 638 F.2d at 1133–34.

The court in *Todd* noted that there is a middle position exemplified by *Florida Marble Polishers Health & Welfare Trust Fund v. Megahee,* 102 L.R.R.M. (BNA) 2740 (M.D. Fla.1979). The court in that case reasoned that the Supreme Court termed a pre-hire agreement "voidable," not "void." Thus, an employer may exercise the right of repudiation of the pre-hire agreement until the union achieves majority status, but the agreement would be fully enforceable until such repudiation. *Todd, supra.*

Finally, some courts have taken the position here advocated by Conner, that *Higdon* is not limited to picketing, and that a pre-hire agreement is not enforceable at a non-majority job site. *Baton Rouge Building & Construction Trades Council, AFL–CIO v. E. C. Schafer Construction Co., Inc.,* 657 F.2d 806 (5th Cir. 1981); *Vermeer v. Aloha Contractors, Inc.,* 107 L.R.R.M. (BNA) 2894 (D.Or.1980); *Washington Area Carpenters' Welfare Fund v. Overhead Door Co.,* 488 F.Supp. 816 (D.C.D.C.1980).

■ We agree with the Ninth Circuit, which held in *Todd* that "the middle ground, requiring repudiation by the employer in order to avoid the pre-hire agreement, is both the best interpretation of *Higdon* and the best implementation of the national labor policies." If the contract is enforced until the employer repudiates, a minority union will not be able to control an employment situation. Employers will not be able to mislead unions into believing they intend to perform their contractual duties. Thus, "pre-hire agreements will be available to fill the void in the construction industry without allowing minority unions inappropriate leverage in this collective bargaining context." *Todd, supra.* There being no showing of repudiation, summary judgment was improperly entered.

We disagree with Conner's argument that, since it received no benefits from the agreement, it is not bound thereby. "[T]he employer who subjects himself to a § 8(f) agreement reaps the benefits of industrial peace at his worksite and should not complain when he is asked to honor the agreement that made such benefits possible." *New Mexico District Council of Carpenters v. Mayhew Co.,* 664 F.2d 215 (10th Cir. 1981). Here, the pre-hire agreement informed Conner of its labor costs in advance of its bid, permitted access to a readily available pool of skilled workers, and assured Conner of labor peace.

The summary judgment is reversed, and the cause is remanded for further proceedings.

VAN CISE and TURSI, JJ., concur.